**THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OPTIMUM IMAGING TECHNOLOGIES LLC, | |
| *Plaintiff*, | Case No. 2:19-CV-00246-JRG |
| v. | |
| CANON INC., | |
| *Defendant*. | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ON CANON'S AFFIRMATIVE DEFENSES**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ............................... 1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 2

IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT ................................. 4

V.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT THAT NO
       INEQUITABLE CONDUCT OCCURRED IN REVIVAL OF THE '805 PATENT
       (CANON 5TH DEFENSE). ............................................................... 5

       A. The Bar for Inequitable Conduct is High ................................. 5

       B. To Meet Its Burden On the Threshold Elements Under *Therasense*, Defendant Must
          Negate All Reasonable Inferences Except Material Deceit On the PTO ..................... 6

       C. Defendant Cannot Meet Its Burden On the Threshold Elements of Materiality and
          Intent to Deceive ................................................................. 7

             i.    *The Details of Mr. Solomon's Economic Status Are Not Material* ....................... 8

             ii.   *There is No Evidence That Mr. Solomon Deliberately Withhold Information
                   From the PTO* .......................................................... 10

       D. Defendant Cannot Show That the Alleged Misconduct Could Warrant A Finding of
          Unenforceability ................................................................. 11

VI.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S
       PROSECUTION HISTORY ESTOPPEL DEFENSE (6TH DEFENSE) ................... 12

VII.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S LACHES /
       WAIVER / ESTOPPEL / UNCLEAN HANDS DEFENSE (7TH DEFENSE) ........... 13

VIII.  OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S LACK OF
       STANDING DEFENSE (8TH DEFENSE) ............................................ 14

       A. Applicable Legal Standards ................................................ 14

       B. Mr. Solomon Never Assigned the '805 Patent to Solomon Research ........................ 15

       C. Mr. Solomon Did Not Intend to and Did Not Assign the '805 Patent to Solomon
          Research ......................................................................... 16

       D. Recordation of a Subsequent Assignment Nullifies an Earlier Assignment that was
          not Recorded within Three Months of the Assignment ............................... 16

IX.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S DOUBLE
       PATENTING DEFENSE (9TH DEFENSE) ............................................ 17

**X.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S UNENFORCEABILITY / LAPSE / EXPIRATION / ABANDONMENT / LOSS OF RIGHT / INTERVENING RIGHTS DEFENSE (10TH DEFENSE) ......................... 17**

**XI.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S FAILURE TO MARK / FAILURE TO MITIGATE DEFENSE (12TH DEFENSE)......................... 19**

**XII.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S ENSAREMENT DEFENSE (14TH DEFENSE) ............................................ 20**

**XIII.  CONCLUSION ............................................................................ 20**

# TABLE OF AUTHORITIES

**Cases**

*Abbott Point of Care, Inc., v. Epocal, Inc.*, 666 F.3d 1299 (Fed. Cir. 2012) ............................... 15

*Allied Tube & Conduit Corp. v. John Maneely Co.*, 125 F. Supp. 2d 987 (D. Ariz. 2000) .......... 18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................. 4, 5

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272 (5th Cir. 2014) ...... 5

*California Med. Prods., Inc. v. Tecnol Med. Prods., Inc.*, 921 F. Supp. 1219 (D. Del. 1995) ..... 18

*Campmed Cas. & Indem. Co. v. Specialists on Call, Inc.,* Civil Action No. 4:16-CV-00452, 2017
   U.S. Dist. LEXIS 10604 (E.D. Tex. Jan. 26, 2017) .................................................................. 13

*Cardiac Pacemakers, Inc. v. St. Jude Med. Inc.*, CAUSE NO. IP 96-1718-C H/G, 2001 U.S. Dist.
   LEXIS 5753 (S.D. Ind. May 2, 2001) ........................................................................................ 19

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1992) ............................................................................... 4

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009) .............. 20

*Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090 (Fed. Cir. 1998) .................................... 15

*Equistar Chems., LP v. Westlake Chem. Corp.*, No. 6:14CV68, 2016 U.S. Dist. LEXIS 183084
   (E.D. Tex. Feb. 26, 2016) ............................................................................................. 4, 6, 8, 12

*Fonar Corp. v. GE*, 107 F.3d 1543 (Fed. Cir. 1997) .................................................................... 19

*Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373 (Fed. Cir. 2003) ........................ 17

*Glycobiosciences, Inc. v. Innocutis Holdings, LLC,* Civil Action No. 12-1901 (RDM), 2015 U.S.
   Dist. LEXIS 74738 (D.D.C. June 10, 2015) ............................................................................. 19

*Golden Hour Data Sys. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2012 U.S. Dist. LEXIS
   114989 (E.D. Tex. Aug. 15, 2012) ............................................................................................. 6

*In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254 (Fed. Cir. 2018) .......................... passim

*Insta-Foam Prods. v. Universal Foam Sys.,* 906 F.2d 698 (Fed. Cir. 1990) ............................... 12

*Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256 (Fed. Cir. 2007) ................................... 16

*Laerdal Med. Corp. v. Ambu, Inc.*, 877 F. Supp. 255 (D. Md. 1995) .......................................... 18

*Level Sleep LLC v. Sleep Number Corp.*, No. 2:18-cv-00119 (RWS), Dkt. No. 178 (E.D. Tex. Jan. 14, 2020) ........................................................................................................ 5, 7, 12

*Mars, Inc. v. TruRX LLC*, No. 6:13-cv-526-RWS-KNM, 2016 U.S. Dist. LEXIS 121502 (E.D. Tex. Mar. 1, 2016) ......................................................................................................... 13

*Morgan v. Huntington Ingalls*, 879 F.3d 602 (5th Cir. 2018) ...................................................... 16

*Murphy v. Verizon Communs., Inc.*, 587 F. App'x 140 (5th Cir. 2014) ....................................... 16

*Network Signatures, Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239 (Fed. Cir. 2013) 9, 10, 11

*Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368 (Fed. Cir. 2005) ........................................... 18

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323 (Fed. Cir. 2002) ............. 17

*Sauder Mfg. Co. v. J Squared*, No. 3:14 CV 962, 2017 U.S. Dist. LEXIS 229957 (N.D. Ohio July 19, 2017) ................................................................................................................ 7, 12

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,* 137 S. Ct. 954 (2017) ....... 13

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365 (Fed. Cir. 2008) .............. 7

*SiRF Tech., Inc. v. ITC*, 601 F.3d 1319 (Fed. Cir. 2010) ............................................................. 17

*Sky Techs. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009) ....................................................... 14

*Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000) .................................................. 15

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008) ...... 5, 6, 10, 11

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ................... passim

*United States Auto. Ass'n v. Wells Fargo Bank, N.A.,* No. 2:18-cv-00245-JRG, 2019 U.S. Dist. LEXIS 99285 (E.D. Tex. June 13, 2019) ......................................................................... 16

*United States v. Solomon*, 825 F.2d 1292 (9th Cir. 1987) ............................................................ 15

*Utecht v. Olson*, 84 F. Supp. 2d 1039 (D. Minn. 2000) ............................................................... 19

*Vapor Point LLC v. Moorhead*, 832 F.3d 1343 (Fed. Cir. 2016) ........................................... 14, 15

*Wells v. Kessler Corp.*, No. 4:17-cv-02709-AGF, 2018 U.S. Dist. LEXIS 39854 (E.D. Mo. Mar. 12, 2018) ......................................................................................................................... 14

**Statutes**

iv

35 U.S.C. § 41(c)(1).................................................................................................................. 18

35 U.S.C. §261 ....................................................................................................................... 14

**Other Authorities**

MPEP 711.03(c)(II)(D)................................................................................................... 9, 10, 11

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................................. 4

## I.    INTRODUCTION

With its answer, Defendant Canon Inc. ("Canon") asserted sixteen affirmative defenses, most of which were entirely speculative and have no support. As a result, Plaintiff Optimum Imaging Technologies ("OIT"), hereby moves for summary judgment as to the following affirmative defenses in Canon's Answer: (1) inequitable conduct (5th defense); (2) prosecution history estoppel (6th defense); (3) laches / waiver / estoppel/ unclean hands (7th defense); (4) lack of standing (8th defense); (5) double patenting (9th defense); (6) unenforceability / lapse / expiration / abandonment / loss of right / intervening rights (10th defense); (7) failure to mark / failure to mitigate (12th defense); and (8) ensnarement (14th defense). Applying the correct law, and based on the undisputed material facts, Canon cannot show that any reasonable jury could find in its favor as to any of these affirmative defenses.

## II.    STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

(1) Should the Court grant OIT summary judgement as to Canon's inequitable conduct defense?

(2) Should the Court grant OIT summary judgement as to Canon's prosecution history estoppel defense?

(3) Should the Court grant OIT summary judgement as to Canon's laches / waiver / estoppel / unclean hands defense?

(4) Should the Court grant OIT summary judgement as to Canon's lack of standing defense?

(5) Should the Court grant OIT summary judgement as to Canon's double patenting defense?

(6) Should the Court grant OIT summary judgement as to Canon's unenforceability / lapse / expiration / abandonment / loss of right / intervening rights defense?

(7) Should the Court grant OIT summary judgement as to Canon's failure to mark / failure to mitigate defense?

(8) Should the Court grant OIT summary judgement as to Canon's ensnarement defense?

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Statement of Undisputed Material Fact ("SUF") No. 1: Mr. Solomon filed U.S. Patent Application No. 11/825,251 ("the '805 Application") on July 6, 2007. Ex. A.

SUF No. 2: The Asserted Patent, U.S. Patent No. 7,612,805 ("the '805 Patent"), was issued on November 3, 2009. Ex. B.

SUF No. 3: Along with the patent application, Mr. Solomon indicated that no assignment had been made on required Form PTO/SB/05 and did not submit a written instrument conveying an interest in the Application. *See* Ex. C, at 2-3.

SUF No. 4: The USPTO mailed a Notice of Allowance on or about July 23, 2009, confirming no assignment of the Application had been made during prosecution. *See* Ex. D.

SUF No. 5: When Mr. Solomon filled out and returned the Notice of Allowance transmittal form on September 18, 2009, he confirmed that no assignment had been made by leaving section 3 blank. Ex. E.

SUF No. 6: The reference to "Solomon Research" on the cover sheet of Mr. Solomon's submission was an inadvertent carryover from a prior template he had used and not intended to indicate any assignment. *See* Ex. F (Solomon Dec., ¶ 2.)

SUF No. 7: The '805 Patent issued on November 3, 2009, with no assignment. Ex. B.

SUF No. 8: Pursuant to statute, a patentee is required to pay a maintenance fee three years and six months after issuance of a patent to avoid abandonment. 35 U.S.C. § 41(b)(A).

SUF No. 9: Pursuant to regulations, the last day on which OIT could timely pay the maintenance fee was on the fourth anniversary of the issuance date - November 4, 2013. 37 C.F.R. 1.362; Ex. B.

SUF No. 10: On February 21, 2017, the USPTO received Mr. Solomon's petition for revival of the '805 Patent pursuant to 37 C.F.R. 1.378(c), which "certifies that the delay in payment

2

of the maintenance fee to this patent was unintentional," along with payment-in-full of the belated maintenance fee. *See* Ex. G.

SUF No. 11: On March 28, 2017, the USPTO granted the revival of the '805 Patent. *See* Ex. H.

SUF No. 12: On May 16, 2017, the USPTO received a "Supplemental Amendment to Maintenance Fee Revival," from Mr. Solomon, stating that he "failed to pay the maintenance fee for '805 due to severe economic constraints," and that he believes "'economic constraints' is a sufficient reason for unintentional delay in paying maintenance fees." *See* Ex. I.

SUF No. 13: On June 5, 2017, the USPTO received another "Supplemental Amendment to Maintenance Fee Revival," from Mr. Solomon, "to fully inform the PTO of the basis for my certification that the delay was unintentional," and "seek confirmation that the grant of my earlier petition fully satisfies PTO policies and procedures." *See* Ex. J.

SUF No. 14: On June 23, 2017, the USPTO mailed an "Acknowledgement of Letter" to Mr. Solomon, in "acknowledgment of [Mr. Solomon's two] letters filed May 16, 2017 and June 5, 2017 regarding the decision . . . granting the [revival] petition . . . ." *See* Ex. K. The USPTO stated that both of Mr. Solomon's letters "have been made of record," and "[a]ny relief being sought in the letters . . . has already been granted in the decision mailed March 28, 2017." *Id.*

SUF No.15: On June 25, 2019, Mr. Solomon assigned the '805 Patent to OIT. *See* Ex. L.

SUF No. 16: The USPTO Assignment Database only shows one assignment for the '805 Patent from Mr. Solomon as the Assignor to OIT as the Assignee. *See* Ex. M.

SUF No. 17: Neal Solomon has always been the sole owner of Solomon Research LLC and Optimum Imaging Technologies LLC. *See* Ex. F (Solomon Dec., ¶ 4.).

SUF No. 18: The June 25, 2019 assignment of the '805 Patent to OIT is the only assignment

that was ever made regarding the '805 Patent or its application. *See* Ex. F (Solomon Dec., ¶ 5.)

SUF No. 19: The claim construction order in this case issued on June 11, 2020. ECF 88.

SUF No. 20: The complaint in this case does not allege that OIT seeks damages outside the statutorily allowable period. Complaint, ECF 1.

SUF No. 22: The patentee submitted a terminal disclaimer in the '339 Patent prosecution. Ex. N.

SUF No. 23: The complaint in this case alleges that OIT is asserting damages only for a reasonable royalty. *See* Complaint ECF 1, ¶ 41.

SUF No. 24: OIT never alleged that it had any products that practice the patents-in-suit. *See* Complaint, ECF 1 (no allegation of OIT products practicing the patent; only seeking royalty).

## IV.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). "A 'material fact' is one that might affect the outcome of the suit under governing law." *Equistar Chems., LP v. Westlake Chem. Corp.*, No. 6:14CV68, 2016 U.S. Dist. LEXIS 183084, at *3 (E.D. Tex. Feb. 26, 2016) (quoting *Liberty Lobby*, 477 U.S. at 248).

"The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case." *Id. at *4* (citing *Stults v. Conoco, Inc.* 76 F.3d 651, 655 (5th Cir. 1996)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1992). "Once a party has made that showing, the nonmoving party bears the burden of establishing otherwise by supporting his contentions with some evidence." *Level Sleep LLC v. Sleep Number Corp.*, No. 2:18-cv-00119 (RWS), Dkt. No. 178, at *2 (E.D. Tex. Jan. 14, 2020) (attached hereto, Ex. O). "The non-moving party cannot 'rest

upon mere allegations or denials of [the] pleading but must set forth specific facts showing there is a genuine issue for trial.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 248). "Summary judgment is appropriate if the non-movant fails to make a showing sufficient to establish the existence of an element essential to a party's case." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (internal citations omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Liberty Lobby,* at 263. For invalidity and unenforceability and any other equitable defenses, the patent claims are presumed valid and "the Court must evaluate whether the evidence is sufficient for a fact finder to find [inequitable conduct] by clear and convincing evidence." *Level Sleep*, No. 2:18-cv-00119, at *13 (Ex. O) (quoting *Liberty Lobby*, 477 U.S. at 355)*.*

## V.  PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT THAT NO INEQUITABLE CONDUCT OCCURRED IN REVIVAL OF THE '805 PATENT (CANON 5TH DEFENSE).

Canon's inequitable conduct relates to the expiration and revival of U.S. Patent No. 7,612,805 (the '805 Patent). Canon inappropriately attributes wrongdoing to Mr. Solomon seeking revival of the '805 Patent and explaining that the lapse due to nonpayment of fees resulted from to economic constraints. That cannot support an inequitable conduct.

### A.  The Bar for Inequitable Conduct is High

For inequitable misconduct, a defendant must present clear and convincing evidence that: (1) the applicant made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) did so with the specific intent to deceive the PTO. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). "[E]ven if this elevated evidentiary burden is met as to both elements, the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable." *Id.*

In *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011), the Court described inequitable conduct claims as the "atomic bomb" of patent litigation, noting "inequitable conduct regarding any single claim renders the entire patent unenforceable." Patent infringement defendants have opportunistically employed this "atomic bomb"—often baselessly—to such an extent that it has become a "plague" on patent courts, and it is alleged by an estimated 80% of all defendants in infringement cases. *Id.* at 1289. The Federal Circuit therefore "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290; *see also Golden Hour Data Sys. v. emsCharts, Inc.*, No. 2:06-CV-381-JRG, 2012 U.S. Dist. LEXIS 114989, at *29 (E.D. Tex. Aug. 15, 2012) ("Subsequently the Federal Circuit decided *Therasense*, requiring this Court to completely revisit the inequitable conduct issue in this case.").

In this context, testimony of an individual certifying "unintentional" delay in maintenance fee payments "is not necessary to the Court's finding and therefore does not preclude summary judgment." *Level Sleep* (Ex. O) at 13, 16; *see also Equistar*, 2016 U.S. Dist. LEXIS 183084, at *11 (rejecting in a case concerning false certifications in maintenance fee payments the argument "that intent is a fact issue and the jury should determine whether the error[s] . . . are honest mistakes or intentional attempts to mislead the PTO"). Inequitable conduct claims are tried to the Court, not the jury. *Golden Hour Data Sys*, at *4.

### B.   To Meet Its Burden On the Threshold Elements Under *Therasense*, Defendant Must Negate All Reasonable Inferences Except Material Deceit On the PTO

The Court in *Therasense* set a high bar to prove inequitable conduct—one Canon does not and cannot clear in this case. There is no evidence that Mr. Solomon intentionally deceived the PTO, and the legal standard shows that there must be more than innuendo raised by Canon in any event. The Court held in *Therasense* held that "the evidence must be sufficient to ***require*** a finding

of deceitful intent in light of all the circumstances." *Therasense*, 649 F.3d at 1290 (emphasis in original, citation omitted). "Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290–91. Any other explanation means the defense of inequitable conduct fails as a matter of law. *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1379 (Fed. Cir. 2008) ("a district court clearly errs in overlooking [the innocent inference] in favor of [the inference of inequitable conduct].");  *see also Level Sleep*, No. 2:18-cv-00119, at *15–16 (Ex. O).

### C.  Defendant Cannot Meet Its Burden On the Threshold Elements of Materiality and Intent to Deceive

Defendant cannot meet its burden on the threshold elements to show that the ***only*** reasonable interpretation of the facts is that Mr. Solomon somehow defrauded the PTO by deliberately withholding material information and that the PTO would not have revived the patent had it known the truth. As a result, Plaintiff is entitled to summary judgment on the issue of inequitable conduct. *See Level Sleep*, No. 2:18-cv-00119, at *15 (Ex. O) (granting summary judgment on the issue of inequitable conduct by false certification of "unintentional" delay in payment of maintenance fees, though the "inference [of material deceit wa]s certainly reasonable"); *Sauder Mfg. Co. v. J Squared*, No. 3:14 CV 962, 2017 U.S. Dist. LEXIS 229957, at *5–6 (N.D. Ohio July 19, 2017) (granting summary judgment on the issue of inequitable conduct by false certification of "unintentional" delay in payment of maintenance fees, because the plaintiff "merely used the standard language required by the PTO to obtain relief from a missed procedural deadline," which "is neither clear nor convincing evidence of an intent to deceive the PTO"); *Equistar*, 2016 U.S. Dist. LEXIS 183084, at *11 (granting summary judgment on the issue of inequitable conduct by false designation as "small entity" in the payment of maintenance fees, for lack of proof of "a deliberate, intentional attempt to deceive the PTO").

### i.   *The Details of Mr. Solomon's Economic Status Are Not Material*

To establish materiality Defendant would need to prove that the Patent Office "would [not] have allowed [the patent] had it been aware of the undisclosed [information]." *Therasense*, 649 F.3d at 1291. Defendant cannot make that showing.

Defendant contends that "'economic constraints' do not qualify as unintentional grounds for reviving a patent under the law and PTO rules." Dkt. No. 99, at 6 (citing *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1272–73 (Fed. Cir. 2018)). Defendant's argument is inapposite, incorrect, unsupported by the cited case, and contradicted by Federal Circuit precedent. It also ignores that Mr. Solomon told the PTO his reason for his petition to revive the PTO, and the PTO accepted that explanation.

*First,* Mr. Solomon did not withhold the reason for his revival petition. On the contrary, to be transparent he twice stated the basis for the delayed payment even though he was not required to do so. *See* Ex. C–D (stating, "[t]here was no place on form 45 to state the reason that may satisfy the unintentional standard," and "I believe it prudent to supplement my previous petition," to specify that "there were economic constraints that caused the unintentional delay"). As a matter of law and common sense, information that is, in fact, ***disclosed*** to patent officials cannot also be the information that was wrongfully ***withheld***. *See Therasense*, 649 F.3d at 1287.

*Second*, Defendant's argument is incorrect and unsupported. There is no law or rule stating that financial constraints cannot form the basis for "unintentional" delay in payment of maintenance fees. *Rembrandt* does not hold otherwise; instead it notes that regulation state a delay is not "unintentional" if in reality the patentee "decided to abandon the [patents] because it believed that they were not worth the fee." *Rembrandt*, 899 F.3d at 1274. That has nothing to do with the facts here, where Mr. Solomon cited "economic constraints" as his reason.

8

*Third*, Defendant's position is contradicted by the Federal Circuit's decisions in *Rembrandt* and *Network Signatures*. Defendant incorrectly argues that the patentee must be *unaware* of the missed payment, that non-payment was an accident. That is not the law. In *Network Signatures,* the patentee would "'allow the patent to go abandoned' as a matter of 'routine practice' absent any 'identified commercial interest.'" *Network Signatures*, *Inc. v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1241 (Fed. Cir. 2013). Nevertheless, the Federal Circuit held that the patentee's mistaken belief that there was no commercial interest rendered the delay "unintentional," even though the patentee was aware of the impending fee deadline and deliberately chose abandonment. *Id.* The Court stressed that the legislative purpose of the act culminating in 37 C.F.R. § 1.378(3) was to *relax* the standards relating to delayed payment of maintenance fees, and thereby *avoid the harsh result* of abandonment. *Id.* at 1243 ("The 'unavoidable' standard has proved to be too stringent in many cases."). Moreover, alluding to *Chevron* and basic principles of agency deference and that courts should not "second-guess" the PTO's interpretation of its own rules, the Court held that "it is almost surely preferable for a reviewing court not to involve itself in the minutiae of Patent Office proceedings and to second-guess the Patent Office on procedural issues at every turn.'" *Id.* (citation omitted).

In turn, the PTO's own rules expressly state an expectation of agency deference on this exact issue, *i.e.*, that courts *will not* second-guess its determinations on "unintentional" delay of payments. *See* MPEP 711.03(c)(II)(D), *Delay Until the Filing of a Grantable Petition* ("The Office does not generally question whether there has been an intentional or otherwise impermissible delay [in certain circumstances]. Thus, an applicant seeking revival . . . [may still] avoid the question of intentional delay being raised by the Office (***or by third parties seeking to challenge any patent issuing from the application***).") (emphasis added). Further, the Federal Circuit has granted the

PTO the deference it seeks on revival decisions absent "particularly egregious" and "pervasive misconduct" by the patentee. *Rembrandt*, 899 F.3d at 1265, 1269, 1274–75 (specifically "'improperly compensated its fact witnesses, in violation of ethical rules of conduct,'" and it "'engaged in . . . widespread document spoliation, over a number of years.'"). Therefore, as a matter of law Defendant cannot show that material information was withheld from the PTO, and Plaintiff is entitled to summary judgment.[1] *Id.; Therasense*, 649 F.3d at 1290–91.

### ii. *There is No Evidence That Mr. Solomon Deliberately Withhold Information From the PTO*

Defendant cannot meet its burden on the second threshold element to "prove by clear and convincing evidence that the material information was withheld with the specific intent to deceive the PTO." *Star*, 537 F.3d at 1366. "Intent and materiality are separate requirements," and so "a court must weigh the evidence of intent to deceive independent of its analysis of materiality." *Therasense*, 649 F.3d at 1290-91 ("A district court should not use a 'sliding scale'). Even if Defendant proved (it did not) a withholding of material information, it cannot show Mr. Solomon "knew that [the information] was material, and made a deliberate decision to withhold it." *Id.*

To the contrary, Mr. Solomon made a deliberate decision to *err on the side of transparency* in his revival of the '805 Patent, and to reveal *even more* about the cause of delay than required by the PTO. *See* Ex. C–D. Then, the PTO made a deliberate decision—in keeping with an intentionally non-punitive legislative and regulatory scheme surrounding patent fees, (*see* MPEP 711.03(c)(II)(D); *Network Signatures*, 731 F.3d at 1243; *Rembrandt*, 899 F.3d at 1266)—that further inquiry into the details of Mr. Solomon's financial status was unwarranted. *See* Ex. E.

---

[1] As such the details of Mr. Solomon's economic circumstances are irrelevant because the PTO accepted a recitation of "economic constraints" and that decision is one that the Federal Circuit and the PTO agree is immune to attack "by third parties seeking to challenge [the revived] patent." MPEP 711.03(c)(II)(D); *Network Signatures*, 731 F.3d at 1243; *Rembrandt*, 899 F.3d at 1265.

That sequence of good faith decision-making by the PTO and Mr. Solomon cannot be twisted by Defendant into a violation of "clear guidance on the precise issue" of economic constraints, nor a "particularly egregious," "pattern of misconduct" by Plaintiff. *Rembrandt*, 899 F.3d at 1274–75. Even more clearly, Defendant cannot present such clear and convincing evidence on both of these prerequisites for reexamination of PTO revival decisions as to negate every other reasonable inference and thereby "require" a finding in its favor. *Therasense*, 649 F.3d at 1290.

### D. Defendant Cannot Show That the Alleged Misconduct Could Warrant A Finding of Unenforceability

There is no evidence of misconduct here but "even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable." *Star*, 537 F.3d at 1365. "Just as it is inequitable to permit a patentee who obtained his patent through deliberate misrepresentations or omissions of material information to enforce the patent against others, it is also inequitable to strike down an entire patent where the patentee only committed minor missteps or acted with minimal culpability or in good faith." *Id.,* at 1366. Thus, "the district court must balance the *substance* of [the materiality and deceptive intent] and all the equities of the case to determine whether the severe penalty of unenforceability should be imposed." *Id.*, at 1367 (emphasis in original); *Therasense*, 649 F.3d at 1293 (examples of "egregious misconduct": "perjury and suppression of evidence," "manufacture and suppression of evidence," and "bribery and suppression of evidence").

Courts are particularly loathe to apply inequitable conduct related to a patentee's asserting of "unintentional" payment of maintenance fees. The Federal Circuit expressly reconciled *Network Signatures* with *Rembrandt* by emphasizing that "none of the [plaintiff's] statements in [*Network Signatures*] were particularly egregious," whereas in *Rembrandt*, "the same people who deceived the PTO were involved in a variety of other misconduct." *Rembrandt*, 899 F.3d at 1274–75 ("[i]n

11

making the[ finding of inequitable conduct], the district court also considered the misconduct discussed above," including that the patentee "'improperly compensated its fact witnesses, in violation of ethical rules of conduct,'" and it "'engaged in . . . widespread document spoliation, over a number of years,'" whereby it "destroyed thousands of boxes of documents" in the midst of litigation). No such additional evidence is even alleged—let alone proved—here. *See also Sauder*, 2017 U.S. Dist. LEXIS 229957, at \*5–6 (holding false certification of unintentional delay did not meet inequitable conduct standard, holding that "even if ULC had met its burden of proving materiality and intent, this Court—after weighing the equities—would not invalidate the '288 Patent and its entire family. Neither Sauder's nor its attorney's alleged conduct is so egregious as to warrant employing the 'atomic bomb of patent law.'"); *see also Level Sleep*, No. 2:18-cv-00119, at \*13 (Ex. F); *Equistar*, 2016 U.S. Dist. LEXIS 183084, at \*10 (granting summary judgment where plaintiff "contends that it acted with a good faith belief that it was paying the correct fees").

For all the above reasons, as a matter of law Defendant cannot show egregiousness, and Plaintiff is entitled to summary judgment.

## VI.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S PROSECUTION HISTORY ESTOPPEL DEFENSE (6TH DEFENSE)

Prosecution history estoppel as an affirmative defense is applied "to claim amendments to overcome rejections based on prior art and to arguments submitted to obtain the patent." *Insta-Foam Prods. v. Universal Foam Sys.,* 906 F.2d 698, 704 (Fed. Cir. 1990). Here, Canon's answer generically alleges that prosecution history applies but do not support an affirmative defense. Rather, Canon cites to its arguments in claim construction. To that extent, the Court already entered its claim construction order. SUF No. 19. Canon has no remaining argument that it is entitled to a prosecution history estoppel defense, and Canon did not seek reconsideration of the claim construction order. Thus, OIT should receive summary judgment as to this defense.

## VII.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S LACHES / WAIVER / ESTOPPEL / UNCLEAN HANDS DEFENSE (7TH DEFENSE)

Canon alleges that "the Asserted Patents are unenforceable on equitable grounds including laches, waiver, equitable estoppel, and/or unclean hands." (Defenses, ¶ 19.) The only allegation is that OIT's delay in bringing the lawsuit was unreasonable. *Id.* But delay cannot be a defense as a matter of law. Canon has no support for any of this amalgam of conclusory assertions. As to laches, the Supreme Court has rules that laches cannot bar damages during the statutory period under 35 U.S.C. § 286. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,* 137 S. Ct. 954, 967 (2017). OIT has not demanded damages outside the statutory period. SUF No. 20. Thus, there is no basis for a laches defense.

Similarly, there is no evidence of waiver, equitable estoppel, or unclean hands. "Waiver requires an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Mars, Inc. v. TruRX LLC,* No. 6:13-cv-526-RWS-KNM, 2016 U.S. Dist. LEXIS 121502, at *18 (E.D. Tex. Mar. 1, 2016); *see also Campmed Cas. & Indem. Co. v. Specialists on Call, Inc.,* Civil Action No. 4:16-CV-00452, 2017 U.S. Dist. LEXIS 10604, at *9 (E.D. Tex. Jan. 26, 2017). Delay alone therefore cannot support a waiver defense. Also, "[a] party who relies upon estoppel must prove by clear, precise and unequivocal evidence (1) a representation, (2) reliance, (3) a change in position, and (4) detriment." *Campmed*, at *10. Mere delay in bringing a lawsuit does not meet any of these elements, and Canon has not alleged knowledge, reliance, change, or damage.

Finally, as the Federal Circuit held in *Therasense*, unclean hands evolved into inequitable conduct. *Therasense*, at 1287. To the extent this repeats the inequitable conduct pleading, there is no basis to assert it separately. Any other allegation would need to be supported in detail to show Canon could meet the clear and convincing standard, and no such facts exist.

## VIII.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S LACK OF STANDING DEFENSE (8TH DEFENSE)

Canon asserts a defense that OIT has no standing as to the '805 based on the incorrect premise that Mr. Solomon assigned that patent to a different Solomon company named Solomon Research based on a typo on the cover sheet of the patent application. There are no facts supporting the notion that there was any actual assignment to Solomon Research, and there was no such assignment. The only time the '805 Patent was ever assigned was to OIT. Thus, OIT should receive summary judgment as to Canon's lack of standing defense.

### A.   Applicable Legal Standards

It is undisputed that the only recordation of assignment form in this case is the assignment from Mr. Solomon to OIT. SUF Nos. 15, 18. "Recordation of a patent assignment may give rise to a presumption of validity of the assignment." *Wells v. Kessler Corp.*, No. 4:17-cv-02709-AGF, 2018 U.S. Dist. LEXIS 39854, at *10-11 (E.D. Mo. Mar. 12, 2018). Validity of a patent assignment is a question of federal law. *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374, 1379 (Fed. Cir. 2009). "35 U.S.C. § 261 provides that "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."" *Vapor Point LLC v. Moorhead*, 832 F.3d 1343, 1351 (Fed. Cir. 2016) (quoting 35 U.S.C. §261) (O'Malley, J., concurring). Patent ownership cannot be assigned without a "written instrument documenting the transfer of proprietary rights in the patents." *Speedplay, Inc. v. Bebop, Inc*., 211 F.3d 1245, 1250 (Fed. Cir. 2000). "An assignment of a patent must be … unambiguous and show a clear and unmistakable intent to part with the patent; it must express intention to transfer ownership." *United States v. Solomon*, 825 F.2d 1292, 1296 (9th Cir. 1987); *see also, e.g., Speedplay, Inc. v. Bebop, Inc*., 211 F.3d 1245, 1253 (Fed. Cir. 2000) (assignment created by agreement stating all inventions "shall belong exclusively to [plaintiff] and [inventor] hereby conveys, transfers and assigns to [plaintiff] . . . all right, title and

14

interest in and to Inventions.") "Transfers of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261" *Vapor Point LLC*, 832 F.3d at 1351. They must be written so as to "resemble an assignment in both form and substance." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) .

### B.  Mr. Solomon Never Assigned the '805 Patent to Solomon Research

Canon's Answer alleges that "Solomon Research LLC has had ownership rights in the '805 Patent since at least July 6, 2007." Answer, pg. 10, ¶20. That is false. Canon's only "evidence" is a typographical error on the cover page of the patent application that includes the phrase "Assignee: Solomon Research" with no explanation (see Exhibit A) and filing receipts and a patent publication issued by the PTO based on the cover sheet, which was a mistake the PTO later corrected on its own.

Canon's purported proof has nothing to do with whether Mr. Solomon assigned the '805 Patent to Solomon Research. Assignments involve a transfer of title to property and thus require an "instrument in writing" *Abbott Point of Care, Inc., v. Epocal, Inc*., 666 F.3d 1299, 1302 (Fed. Cir. 2012). The cover page of the patent application is not an instrument in writing and thus does not constitute an assignment under 35 U.S.C. §261.

An instrument is a "document that defines rights, duties, entitlements, or liabilities." *United States Auto. Ass'n v. Wells Fargo Bank, N.A.,* No. 2:18-cv-00245-JRG, 2019 U.S. Dist. LEXIS 99285, at *68-69 (E.D. Tex. June 13, 2019); *see also, e.g., Morgan v. Huntington Ingalls*, 879 F.3d 602, 609 n.19 (5th Cir. 2018); *Murphy v. Verizon Communs., Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014). The cover page of a patent application is not a formal or legal document and does not give formal expression to an agreement.

The cover page, especially when viewed in comparison to the Assignment document prepared by Mr. Solomon when he assigned the '805 Patent to OIT, is woefully inadequate to effect an

assignment. Compare Exhibit D with Exhibit G. When Mr. Solomon intended to assign the patent application, he filled out the correct paperwork with the U.S. Patent Office and also prepared a written instrument clearly titled, "Assignment," which clearly conveyed the '805 Patent from inventor Neal Solomon to Optimum Imaging Technologies LLC. Exhibit L.

### C. Mr. Solomon Did Not Intend to and Did Not Assign the '805 Patent to Solomon Research

"In construing the substance of [an] assignment, a court must carefully consider the intention of the parties and the language of the grant." *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1265 (Fed. Cir. 2007). Here, Mr. Solomon is the sole named inventor and the 100% owner of Solomon Research and OIT. SUF No. 17. As a result, he alone knows what the intentions were regarding assignments and ownership. The accompanying Solomon declaration makes clear that Mr. Solomon never intended to nor did he assign the '805 Patent application to Solomon Research and that it was simply an errant phrase carried over from a prior patent application. SUF No. 6. Had he assigned the patent to Solomon Research, as the sole owner he subsequently could have just assigned it again from Solomon Research to OIT. But he knew that he never assigned the '805 Patent to Solomon Research. That is why there is only one assignment of record, which is the assignment from Mr. Solomon to OIT using the standard PTO form for that purpose (instead of simply the word "Assignee" on a page that does not relate to assignments). Canon has no proof to the contrary.

### D. Recordation of a Subsequent Assignment Nullifies an Earlier Assignment that was not Recorded within Three Months of the Assignment

Under 35 U.S.C. §261, "[a]n interest that constitutes an assignment…shall be void … without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase." *See also SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1328 (Fed. Cir. 2010). "That statute is by its terms limited to situations in which the patent owner

16

makes inconsistent assignments, grants, or conveyances to two entities, and the question is whether the later assignee should prevail." *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp*., 284 F.3d 1323, 1327 (Fed. Cir. 2002). Here, there was no recordation of any assignment of the '805 Patent prior to the assignment from Mr. Solomon to OIT. SUF No. 18. Thus, even were Canon's allegations true (they are not), any such assignment was voided when not recorded in 2009, and assignment to OIT remains valid.

This "assignment" issue is not a real fact dispute. Mr. Solomon is the only person who owns both companies and has attested that he never intended to nor assigned the '805 Patent to Solomon Research as Canon alleges. As a result, OIT owns the patents by assignment, which definitively forecloses this "lack of standing" defense.

## IX.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S DOUBLE PATENTING DEFENSE (9TH DEFENSE)

Canon's 9th affirmative defense is for double patenting. Double patenting occurs when a patent claims *identical* subject matter to an earlier patent. *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1377 (Fed. Cir. 2003). Double patenting is an invalidity defense, so to assert it Canon must overcome the stator presumption of validity by clear and convincing evidence. *Id.*

Canon has no facts to support such a defense. The '805 Patent resulted from the first application in its family, and the '339 patent included a terminal disclaimer so that there would be no double-patenting issues. SUF No. 22. As a result, there is no double patenting issue present in this case. *See, e.g., Perricone v. Medicis Pharm. Corp.,* 432 F.3d 1368, 1375 (Fed. Cir. 2005).

## X.    OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S UNENFORCEABILITY / LAPSE / EXPIRATION / ABANDONMENT / LOSS OF RIGHT / INTERVENING RIGHTS DEFENSE (10TH DEFENSE)

This defense is based on the same underlying facts as the inequitable conduct defense regarding the lapse of the '805 Patent between November 29, 2013 and March 28, 2017, and the

PTO's decision to revive the patent. Canon alleges that (1) the revival was improper and erroneous (Answer, ECF 80 ¶ 30), and (2) that even if it was properly revived, the defense of intervening rights allies including under 35 U.S.C. § 41(c)(2) (*id.,* ¶ 31).

It is undisputed that the PTO Director accepted the fee and revived the '805 Patent. SUF No. 11. As a matter of law, defendants in patent cases have no right to second guess the PTO's determination to revive an expired patent, so this portion of the defense is legally untenable and cannot serve as the basis for any intervening rights defense. The discretion is completely within the purview of the PTO Director, and once accepted, the expiration period is extinguished. "If the Director accepts payment of a maintenance fee after the 6-month grace period, the patent shall be considered as not having expired at the end of the grace period." 35 U.S.C. § 41(c)(1). "[T]wo courts have addressed the issue, and both conclude that defendants in an infringement action generally cannot assert erroneous reinstatement as an affirmative defense. *See California Med. Prods., Inc. v. Tecnol Med. Prods., Inc.*, 921 F. Supp. 1219, 1256-57 (D. Del. 1995); *Laerdal Med. Corp. v. Ambu, Inc.*, 877 F. Supp. 255, 259-60 (D. Md. 1995)." *Allied Tube & Conduit Corp. v. John Maneely Co.*, 125 F. Supp. 2d 987, 1001-03 (D. Ariz. 2000); *see also Glycobiosciences, Inc. v. Innocutis Holdings, LLC,* Civil Action No. 12-1901 (RDM), 2015 U.S. Dist. LEXIS 74738, *15-16 (D.D.C. June 10, 2015). Courts that have analyzed the statute have uniformly held that a defendant has no right to challenge the PTO Director's decision to revive a patent that has lapsed due to nonpayment of a maintenance fee.

As to the issue of providing an intervening rights defense for the lapse period between 2013 and 2017, Canon has not and cannot provide evidence to make a *prima facie* showing for the defense. To maintain such a defense, a defendant must show that it (1) knew about the patent-in-suit, (2) knew about the expiration of the patent during the time between expiration and revival,

and (3) in reliance of the expiration, intentionally developed a product in order to practice the patent during the expired period. *See Fonar Corp. v. GE*, 107 F.3d 1543, 1554 (Fed. Cir. 1997); *see also Utecht v. Olson*, 84 F. Supp. 2d 1039, 1043 (D. Minn. 2000) ("Based on the *Fonar* decision, the Court concludes that intervening rights under Section 41(c)(2) are not absolute, but depend instead on which of the allegedly infringing activity was undertaken in reliance on the lapse period."); *Cardiac Pacemakers, Inc. v. St. Jude Med. Inc.*, Cause No. IP 96-1718-C H/G, 2001 U.S. Dist. LEXIS 5753, at *9 (S.D. Ind. May 2, 2001) ("the Federal Circuit has written that intervening rights under § 41(c)(2) do in fact require proof that the alleged infringer relied to its detriment upon the lapse resulting from the inadequate fee payments") (citing *Fonar*). 35 U.S.C. § 41(c)(2) does not "immunize discreet products made, used, or sold as part of a continuing commercial effort begun before the lapse." *Fonar*, 107 F.3d 1543, 1554 (finding defendant liable for damages during the lapse period, because defendant began infringing the patent before the lapse).

Canon provided no evidence that it knew about the '805 Patent and its expiration during the lapse period, let alone that it relied on that expiration to adopt the '805 Patent technology in reliance on the expiration. Thus, OIT is entitled to summary judgment on this defense.

## XI.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S FAILURE TO MARK / FAILURE TO MITIGATE DEFENSE (12TH DEFENSE)

Canon's 12th affirmative defense is failure to mark or mitigate. It is entirely based on the statement, "To the extent OIT has its own products that practice the Asserted Patents…." (Defenses, ¶ 33.) But OIT never alleged that it has ever had any such products, and it has not. SUF No. 24. As recognized by the "to the extent" phrase, Canon understands that marking is not required when there is not a product to mark. 35 U.S.C. § 287. Thus, Canon has no basis to assert a defense based on failure to mark.

## XII.   OIT IS ENTITLED TO SUMMARY JUDGMENT AS TO CANON'S ENSAREMENT DEFENSE (14TH DEFENSE)

Similar to Canon's prosecution history estoppel defense, this defense has no basis in lawa and no basis to be presented to a jury. Ensnarement is really an issue for claim construction, as a claim should not be construed in a way that would "ensnare" the prior art. *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F.3d 1314, 1323 (Fed. Cir. 2009). Ensnarement is a matter of law for the Court to decide and is not appropriate to present to the jury. *Id*. Had Canon a basis for this defense, the argument would have been asserted in claim construction. It was not, and Canon never moved for reconsideration of the Court's claim construction. Canon has presented no evidence that ensnarement applies, and OIT should receive summary judgment as to this defense.

## XIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Summary Judgment as to the Canon affirmative defenses discussed herein.

Dated: October 26, 2020                    Respectfully submitted,

By: */s/ Korula T. Cherian*

Amadou Kilkenny Diaw
Thomas Dunham
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
amadoukd@ruyakcherian.com
tomd@ruyakcherian.com

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702
sunnyc@ruyakcherian.com
bobh@ruyakcherian.com

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)
mark@themannfirm.com
blake@themannfirm.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

*Attorneys for Plaintiff Optimum
Imaging Technologies LLC*