UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OPTIMUM IMAGING TECHNOLOGIES LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>CANON INC.,<br><br>*Defendant.* | C.A. No. 2:19-cv-00246-JRG<br><br>JURY TRIAL DEMANDED |

**DEFENDANT CANON INC.'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF PROF. JEFFREY SEDLIK REGARDING COMPARABILITY OF LICENSED TECHNOLOGY**

**TABLE OF CONTENTS**

I. Introduction ............................................................................................................. 1
II. Background .............................................................................................................. 2
III. Applicable Standard ................................................................................................. 4
IV. Argument ................................................................................................................. 5
    A. Prof. Sedlik Is Not Qualified to Opine on the Technological Comparability of Patents ........................................................................................................... 5
    B. Prof. Sedlik's Opinion that Certain Licensed Patents Have Comparable Technology Is Unreliable and Unhelpful and Should Be Excluded ...................... 6
V. Conclusion ............................................................................................................... 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Curtis v. M&S Petroleum, Inc.*,
    174 F.3d 661 (5th Cir. 1999) ............................................................................................4

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993) ..........................................................................................................4

*Flexuspine, Inc. v. Globus Med., Inc.*,
    No. 6:15-cv-201-JRG-KNM, 2016 WL 9276023 (E.D. Tex. July 6, 2016) .............................8

*Genband US LLC v. Metaswitch Networks Corp.*,
    No. 2:14-cv-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) .....................................4

*Johnson v. Arkema, Inc.*,
    685 F.3d 452 (5th Cir. 1999) ............................................................................................4

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..........................................................................................................4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012) .........................................................................................7, 8

*M2M Sols. LLC v. Motorola Sols., Inc.*,
    No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016) ................................................5, 6

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) ............................................................................................4

*Qualcomm Inc. v. Apple Inc.*,
    No. 17cv1375 DMS(MDD), 2019 U.S. Dist. LEXIS 9464
    (S.D. Cal. Jan. 18, 2019) ...................................................................................................7

*S3g Tech., Inc. v. Unikey Techs., Inc.*, No. 6:16-cv-400-RWS-KNM, 2018 U.S.
    Dist. LEXIS 239516
    (E.D. Tex. May 18, 2018) ................................................................................................5

**Other Authorities**

Fed. R. Evid. 702 ....................................................................................................1, 4, 5, 8

Defendant Canon Inc. ("Canon") hereby moves to exclude the testimony of Plaintiff Optimum Imaging Technologies LLC's ("OIT") purported expert, Prof. Jeffrey Sedlik, regarding whether certain licensed patents cover technology comparable to that of the asserted patents.

I.   INTRODUCTION

Prof. Sedlik, a photographer, has no technical expertise relevant to analyzing patents. Yet OIT has offered him to provide "expert" testimony on the supposed comparability of certain licensed ▮▮▮▮ Patents to the patents being asserted by OIT in this case. OIT's goal is to bolster the reliance of its damages expert on the ▮▮▮▮ licenses, and towards that end, Prof. Sedlik has been enlisted to manufacture whatever tenuous connection he can.

The comparability analysis does not hold up, and in any case, Prof. Sedlik is not the right person for this job. Without any indication that he knows how to determine a patent's scope, understands the relevant law, or has ever even studied a patent before now, he purports to opine on what the patents cover and draws conclusions that they are comparable. It is manifestly clear that such a technical undertaking is beyond his expertise and general experience in the industry. He is not "qualified as an expert" under Fed. R. Evid. 702 when it comes to technological comparability of patents, and he should not be allowed to testify on that topic.

Also absent from his report is any clue of what methodology he may have used. He states that he reviewed the patents but does not provide more detail than that. Given his lack of expertise, plus his report's silence on what a proper methodology even would be, there can be no confidence that he used one to render reliable opinions. As it stands, his process for assessing the technical scope of patents and comparing them with others is a black box. His testimony should be excluded on this ground as well.

Finally, the substance of his opinions does not pass muster under Federal Circuit law. He focuses more on the benefits of the inventions, like better images, than the technologies that

yield them. For this and the other reasons discussed, Prof. Sedlik should not be permitted to provide testimony on the comparability of licensed patents.

## II.     BACKGROUND

On September 28, 2020, OIT served the opening report of Prof Jeffrey Sedlik (the "Sedlik Report"). The Sedlik Report offers opinions on the inventions of OIT's asserted patents, the benefits of those inventions, and the comparability of their technology with the technology of certain patents owned by ███████████████████████

Prof. Sedlik does not have a technical background. By his own admission, he is "neither an engineer nor an optical scientist." Ex. 1 (Sedlik Report) at 6. Rather, his professed expertise is in photography, copyright and licensing policy, and advertising. *Id.* at 2-6. As far as his education goes, his C.V. identifies MFA and BFA degrees, a major in liberal studies, and continuing education that includes "intellectual property" as relevant to "photographers, illustrators, designers and other visual creators." *Id.* at Ex. A thereof.

Notwithstanding his lay background, Prof. Sedlik presents opinions regarding the technology of the ███████████ and how it compares to the technology of the Asserted Patents. *Id.* at 18-19. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

-3-

███████████████████████████████████████████████

███████████

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

It is ambiguous to what extent Prof. Sedlik relies on his independent review of the ███████ Patents or Dr. Brogioli's assessment. ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████  ██████████████

███████████

Prof. Sedlik fails to set forth any guideposts as to how he arrived at his conclusions of comparability. He provides no recitation of his understanding of the relevant law, his

---

[1] Canon is contemporaneously filing a *Daubert* motion to exclude the testimony of Dr. Brogioli regarding this subject.

understanding of a patent's scope, whether he knows what a patent claim is, what parts of the patents he reviewed to determine their technology, or whether he had even seen a patent before this engagement. *See id.* at 18-19.

### III.   APPLICABLE STANDARD

"[T]he Rules of Evidence—especially Rule 702" require that judges act as gatekeepers to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "The inquiry envisioned by Rule 702 is … a flexible one." *Id.* at 594; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test.'"). The party offering the expert bears the burden of showing that the testimony is reliable. *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 1999) (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).

"The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999) (ellipsis in original)). "The relevance prong requires the proponent to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue." *Id.* (quoting *Curtis*, 174 F.3d at 668). It is within the purview of the expert to determine the weight of evidence, "so long as he applies reliable principles and methods in making this determination." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *4 (E.D. Tex. Jan. 9, 2016).

## IV. ARGUMENT

### A. Prof. Sedlik Is Not Qualified to Opine on the Technological Comparability of Patents

Prof. Sedlik is a photographer, not an engineer. His experience touches on photography, copyright and licensing policy, and advertising, but even he readily admits that he is "neither an engineer nor an optical scientist." Ex. 1 (Sedlik Report) at 2-6. In short, he identifies zero "knowledge, skill, experience, training, or education" that would enable him to interpret and compare the scope of the ▓▓▓▓▓▓ Patents and the OIT patents being asserted in this case. *See* Fed. R. Evid. 702.

Courts recognize that analyzing patents requires specialized technical knowledge and will thus exclude unqualified individuals from testifying to that end. For example, in *S3g Technology, Inc. v. Unikey Technologies, Inc.*, No. 6:16-cv-400-RWS-KNM, 2018 U.S. Dist. LEXIS 239516 (E.D. Tex. May 18, 2018), this Court excluded an executive vice president of the defendant, serving as its damages expert in the litigation, from testifying as to the technological comparability of a licensed patent to the asserted patents. *Id.* at *9-*10. Even though he had personally negotiated the license in question, this Court observed that his "background and skills [we]re 'negotiating technology licenses related to smart locks, access control systems, and mobile keys' [with] no mention of his technical expertise in the accused technology." *Id.* at *9. This Court found him "unqualified to opine on the technological comparability of the patents-in-suit and the [licensed] Patent" and excluded him from offering opinions to that effect. *Id.* at *9-*10.

Similarly, in *M2M Solutions LLC v. Motorola Solutions, Inc.*, No. 12-33-RGA, 2016 WL 767900 (D. Del. Feb. 25, 2016), a Delaware court court excluded the plaintiff's expert from testifying because, among other reasons, he was not "qualified as an expert to render technical

conclusions about the advantageous characteristics of the patented technology." *Id.* at *3. Despite his over thirty years of experience in the industry, including "articles, TV appearances, and speaking engagements," his "considerable experience in the industry generally" did not translate into "the expertise" necessary "to carefully tie his methodology (or, indeed, any methodology) to" the asserted patent's market footprint. *Id.* at *3-*4. Instead, his "sweeping" conclusions were based on "vague reasoning and [a] lack of explanation demonstrat[ing] little more than a rudimentary understanding of the invention" of the patent. *Id.* at *4. The court also found fault with his "broad statements: that [the patent] describes a device having built-in security features, that alternative products in the market do not, and that security is a major concern in the M2M industry." *Id.*

As in the above cases, here, Prof. Sedlik is unqualified to testify on technological comparability of patents. He professes to have no relevant expertise, nor do his opinions otherwise suggest any. His sweeping opinions that the ▮▮▮▮▮ and the asserted patents result in the same benefits, even though (as he says) the former relate to autofocus while the latter relate to correcting aberrations, are remarkably like the broad statements that the court found to demonstrate "little more than a rudimentary understanding of the invention" in *M2M*, 2016 WL 767900, at *4. Prof. Sedlik did not rely on discussions with OIT's technical expert Dr. Brogioli for the ▮▮▮▮ Patents, and he has no capacity to determine those patents' scope or compare their technology with the asserted patents, so the Court should exclude his testimony on this subject.

    **B.**    **Prof. Sedlik's Opinion that Certain Licensed Patents Have Comparable Technology Is Unreliable and Unhelpful and Should Be Excluded**

Setting aside Prof. Sedlik's dearth of technical expertise, his opinions are unreliable because they are conclusory and utterly opaque as to how he may have reached them. One is left

to guess whether he correctly followed the law and considered relevant aspects of the patents to determine their scope. As basic examples, did he look at the claims of the ▮▮▮▮ and the OIT patents, as opposed to disclosed but unclaimed subject matter? Did he know that claims describe the scope of what a patent covers? Did he know, and know how, to turn to the specification and prosecution history to determine the meaning of claim terms in the ▮▮▮▮ Patents? Did he account for differences between the ▮▮▮▮ Patents and OIT's patents, including any analysis of how important the ▮▮▮▮ Patents were to using autofocus vs. how important OIT's patents are to using aberration correction? His report provides no insight.

    Any reliance on Dr. Brogioli would not save Prof. Sedlik here. Canon is contemporaneously filing a *Daubert* motion to exclude Dr. Brogioli's comparability opinion, and as discussed therein, all Dr. Brogioli had to say about the two sets of patents is that they are both "system level." Ex. 2 (Brogioli Opening Report) at ¶ 130. He does not even identify the ▮▮▮▮ Patents as covering autofocus. Whatever experience Dr. Brogioli has with assessing patents, it cannot bridge the gap here, with no disclosure by either person of it having been relied on for the ▮▮▮▮ Patents.

    As is unsurprising given his utter lack of qualifications, Prof. Sedlik's formulation of the purported comparability between the technologies of the ▮▮▮▮ Patents and the Asserted Patents fails. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012) ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice."). The comparison that he draws—that "[f]undamentally, the two sets of patents are comparable in that they both automate certain process to permit photographers to capture better images"—is far too abstracted to form an appropriate basis for a comparison. *See, e.g., Qualcomm Inc. v. Apple Inc.*, No. 17cv1375 DMS(MDD), 2019 U.S. Dist. LEXIS 9464, at *20-*22 (S.D. Cal. Jan. 18, 2019)

(excluding "perfunctory and wanting" expert opinions describing too "'loose or vague' comparability between the technologies" of the asserted patents and licensed patents).  As this Court has recognized, "[t]his level of abstraction does not establish the requisite link to the claimed technology."  *Flexuspine, Inc. v. Globus Med., Inc.*, No. 6:15-cv-201-JRG-KNM, 2016 WL 9276023, at *5 (E.D. Tex. July 6, 2016).  In that case, the patentee's expert, Dr. Stephen L. Becker (who is also OIT's damages expert in this case, and is relying on the comparability opinions of Prof. Sedlick[2]), concluded that certain licensed patents were technologically comparable because they were "in the same field of use and relate[d] to the same types of products," later identified as "intervertebral implant technology" and "spine implants."  *Id.*  This Court excluded Dr. Becker's testimony on that subject because his "'field of use' abstraction" "did not provide adequate support for his conclusion" on comparability and thus would "not assist the trier of fact."  *Id.*  The situation is much the same here: "automating certain processes … to capture better images" is not a technology but a field of use, which *Flexuspine* excluded.[3]

In sum, Prof. Sedlik has followed an unverifiable methodology, if any, to assert a comparability between the ▇▇▇ Patents and the asserted patents that is far too loose and vague to assist the finder of fact.  *LaserDynamics*, 694 F.3d at 79.  His opinions on that subject should be excluded under Fed. R. Evid. 702.

---

[2] Canon is contemporaneously filing a *Daubert* motion to exclude the testimony of Dr. Becker regarding his damages theory.

[3] Prof. Sedlick is also flat wrong in thinking that the OIT patents were the first to automate aberration correction, as the prior art is replete with examples of cameras that conducted aberration correction in the camera automatically, including most notably Canon's own prior art cameras.  Ex. 3 (Prentice Opening Report) at ¶¶ 174-178.  Had he conducted a review of the prior art in this case (and been qualified to conduct such a review, which he is not), he may have known this.

## V. CONCLUSION

Canon respectfully requests the Court grant Canon's motion to exclude the testimony of Prof. Sedlik regarding comparability of the ▉▉▉▉ Patents.

Date: October 26, 2020

By: /s/ *Michael P. Sandonato (by permission Andrea Fair)*
Michael P. Sandonato
Peter D. Shapiro
Daniel A. Apgar
VENABLE LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 218-2100 (telephone)
(212) 218-2200  (facsimile)
MSandonato@Venable.com
PShapiro@Venable.com
DApgar@Venable.com

Wesley Hill (Texas Bar. No. 24032294)
Andrea L. Fair (Texas Bar. No. 24078488)
Ward, Smith & Hill, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (main line)
(903) 757-2323 (facsimile)
wh@wsfirm.com
andrea@wsfirm.com

*Counsel for Defendant Canon Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on October 26, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Andrea Fair

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the conference required by Local Rule CV-7(h) occurred via teleconference on October 21 between Betty DeRieux, counsel for Plaintiff, and Wesley Hill, counsel for Defendant.  The parties disagree about the substance of the motion, thus discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve

/s/ Andrea Fair

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

This is to certify that the above document should be filed under seal because it contains material designated by the parties as confidential pursuant to the Protective Order entered in this case (Dkt. 42).

/s/ Andrea Fair