# THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OPTIMUM IMAGING TECHNOLOGIES LLC,<br><br>   *Plaintiff*,<br><br>   v.<br><br>CANON INC.,<br><br>   *Defendant*. | Case No. 2:19-CV-00246-JRG<br><br>For Filing Under Seal |

**PLAINTIFF'S OPPOSITION TO THE MOTION TO STRIKE**
**EXPERT TESTIMONY OF PROFESSOR JEFFREY SEDLIK**

Filed Under Seal

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1
II.  BACKGROUND ............................................................................................................ 2
III. LEGAL STANDARD .................................................................................................... 3
IV.  ARGUMENT ................................................................................................................. 4
   A. Professor Sedlik Properly Opines On the Relative Value of Specific Camera Features to Consumers, After the Technological Scope of the Underlying Patents Was Explained to Him ................................................................................................................................ 5
   B. Professor Sedlik Properly Compares the Market Value of the Patented Features Here to the Value of the Licensed ████████████ ............................................................ 7
V.   CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012) ........ 4, 10

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014) ................................. 3, 4, 5

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) .................................... 3, 4, 10

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) ................................... 10

*Flexuspine, Inc. v. Globus Med.*, No. 6:15-cv-201-JRG-KNM, 2016 U.S. Dist. LEXIS 199479
   (E.D. Tex. July 6, 2016) ............................................................................................. 8, 9

*LaserDynaics*, 694 F.3d 51 (Fed. Cir. 2012) ........................................................................ 5, 8

*Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ................................ 5

*M2M Sols. LLC v. Motorola Sols., Inc.*, Civil Action No. 12-33-RGA, 2016 U.S. Dist. LEXIS
   22944 (D. Del. Feb. 25, 2016) ......................................................................................... 7

*Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982
   (S.D. Cal. Sep. 14, 2016) ............................................................................................... 10

*Qualcomm Inc. v. Apple Inc.*, No. 17cv1375 DMS(MDD), 2019 U.S. Dist. LEXIS 9464 (S.D.
   Cal. Jan. 18, 2019) ........................................................................................................... 8

*Sonos, Inc. v. D&M Holdings Inc.*, 297 F. Supp. 3d 501 (D. Del. 2017) ....................................... 5

*VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014) ........................................... 4, 10

*Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308 (Fed. Cir. 2010) ................ 4

**Rules**

Fed. R. Evid. 703 .................................................................................................................. 4

## I. INTRODUCTION

Defendant's Motion to Exclude the Testimony of Professor Jeffrey Sedlik ("Motion," Dkt. No. 145), feigns ignorance of the basic distinction between a technical expert and a damages expert,[1] and invites the Court to do the same. In short, the appropriate division of labor between technical experts and damages experts is as follows: The technical expert examines the patent claims to set forth the *technological* scope of the patent, opining as to the specific technological features covered by a patent, and the specific infringing features of competitors' products. The damages expert, in turn, relies upon and accepts the conclusion that those technological features are covered by the patent, and infringed by the defendant. The role of the damages expert, instead, is to opine as to *how much value* those given technological features convey to the accused products. In other words, the technical expert identifies *which features* are infringing, and the damages expert describes *how much* those features are worth to consumers.

That is exactly the division of labor between Dr. Brogioli and Professor Sedlik in this case, consistently respected throughout their respective expert reports. In no uncertain terms, Professor Sedlik was "instructed to assume that . . . Canon's implementation of lens aberration correction technology at issue infringes the Asserted Patents," and everything that entails. Sedlik Report, at 11–12. Thus, Professor Sedlik relies upon Dr. Brogioli, instead of opining, that the infringing *technological features* are specific "in-camera aberration correction capabilities," and he proceeds to analyze the extent to which this "is an important feature for photographers at all levels of skill." *Id.* at 13.

---

[1] As explained infra, Professor Sedlik's experience as a professional photographer and industry leader enables him to offer testimony relating to the value of the patented technology and, therefore, the damages suffered by OIT.

Filed Under Seal

Likewise, Professor Sedlik relies upon Dr. Brogioli, instead of opining in the first instance, the specific licensed *technological features* ███████████████████████s. Sedlik Report, at 11 ("I also discussed the technology at issue including the technology claimed in the Asserted Patents and the technology claimed in the ██████ Patents discussed below with OIT's technical expert Dr. Brogioli."); *id.* at 19 ████████████████████ ████████████████████ I have also reviewed these patents and discussed them with Dr. Brogioli."). Thus, Professor Sedlik has been given by Dr. Brogioli a description of the specific technological features covered by the Asserted Patents, and the technological features covered by the ██████████, and Professor Sedlik then analyzed the relative market value of those specific features, *i.e.*, "the key benefits of the Asserted Patents or ██████████," to consumers. *Id.* at 19.

Because Professor Sedlik's opinion properly *relies on Dr. Brogioli for the technological features claimed* by the Asserted Patents and ██████████, and *opines only the relative value to consumers* of those given features, Defendant's Motion is without merit. Therefore, Plaintiff respectfully requests that the Motion be denied in its entirety.

## II.     BACKGROUND

Professor Sedlik is the President and CEO of the Picture Licensing Universal System ("PLUS") Coalition, a non-profit international standards body and trade association representing the shared business interests of all industries involved in creation, licensing, and use of photography and illustration. Sedlik Report, at 2. He was a founding member of the PLUS Board of Directors. *Id.* Previously, Professor Sedlik was the National President of the Advertising Photographers of America ("APA"), the leading trade association for commercial photographers in the United States, and he was also the APA's Chief National Advisor on Licensing and

Copyright. *Id.* He has held numerous other leadership roles relating to industry and licensing standards in photography. *Id.* at 2–3.

Professor Sedlik has repeatedly been called to testify before both the United States Senate and House of Representatives on issues relating to photography and intellectual property, including appearances as recent as a few weeks ago. Sedlik Report, at 3; Sedlik Depo., at 43. The United States Copyright Office has relied on Professor Sedlik to train new Registration Examiners on visual art copyright registration issues from 2010 to present. Sedlik Report, at 3.

Professor Sedlik has been a professional photographer for over thirty years, including throughout the time period in which the autofocus technology at issue in the Honeywell licenses was adopted. *Id.* at 6. Additionally, he has 45 years of experience with Canon professional cameras, lenses, accessories and software. *Id.* at 5. He is a long-time faculty member and professor at the Art Center College of Design in Los Angeles, where he sits on the Intellectual Property Committee and teaches advanced courses on the artistic, technical, production, legal, and business aspects of traditional and digital photography. Sedlik Report, at 5. Professor Sedlik has particularized expertise, not only at the industry level, but also with the retail photography equipment marketplace, and related consumer buying behaviors. *Id.* at 6.

### III. LEGAL STANDARD

The Federal Circuit has "held many times, using sufficiently comparable licenses is a generally reliable method of estimating the value of a patent." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1325 (Fed. Cir. 2014), overruled by on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014) ("This court has recognized that licenses may be presented to the jury to help the jury decide an appropriate royalty award.").

Filed Under Seal

"[I]n attempting to establish a reasonable royalty, the 'licenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit.'" *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014). "Prior licenses, however, are almost never perfectly analogous to the infringement action." *Ericsson*, 773 F.3d at 1227*; see also VirnetX*, 767 F.3d at 1330 ("[W]e have never required identity of circumstances."). "Comparisons of past patent licenses to the infringement must account for 'the technological and economic differences' between them." *Wordtech Sys., Inc v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010).

Damages expert testimony "relying on licenses must account for such distinguishing facts when invoking them to value the patented invention." *Ericsson*, 773 F.3d at 1227. "Recognizing that constraint, however, the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Id.*; *see also ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) ("The degree of comparability of the Gemstar and Grande license agreements as well as any failure on the part of ActiveVideo's expert to control for certain variables are factual issues best addressed by cross examination and not by exclusion.").

In conducting this assessment, "[e]xperts routinely rely upon other experts hired by the party they represent for expertise outside of their field." *Apple*, 757 F.3d at 1321. "Rule 703 explicitly allows an expert to rely on information he has been made aware of 'if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Id.* (quoting Fed. R. Evid. 703). "Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field." *Id.*

**IV.   ARGUMENT**

Filed Under Seal

### A. Professor Sedlik Properly Opines On the Relative Value of Specific Camera Features to Consumers, After the Technological Scope of the Underlying Patents Was Explained to Him

Defendant does not dispute the basic characterization of the roles of experts set forth above—that a technical expert should determine *what features are claimed*, and a damages expert should determine *how much the features are worth*.[2] Nor does Defendant contend that Professor Sedlik was prohibited from *relying on Dr. Brogioli*, rather than making an independent judgment, that the patents cover whatever features Dr. Brogioli determined the patents cover; that is, Defendant agrees that a damages expert may properly take as explained the *scope* of patent claims and the corresponding *features* of infringing products. *Apple*, 757 F.3d at 1321. Thus, the Parties do not disagree that testimony of the technical scope, or specific technical features, covered by patents must come from Dr. Brogioli, and Professor Sedlik's role is to provide testimony on the benefit or value of those features in the marketplace.

---

[2] In one passage, Defendant does appear to actually misapprehend the legal standards, rather than the facts. Specifically, in the introduction, the Defendant derides Professor Sedlik's opinion because, "[h]e focuses more on the benefits of the inventions, like better images, than the technologies that yield them." Motion, at 1-2. To be clear, as Defendant acknowledges elsewhere in its brief, it is *exactly* the role of the damages expert to opine "the benefits of the inventions," whereas the technical expert opines the scope of the "technologies that yield [those benefits]." *Id.* Put simply, the technical expert answers the question, ***what features are covered*** by the inventions, while the damages expert answers the question, ***how much a consumer "benefits*** [from] the inventions," (*id.*), *i.e.*, the "increased value" of products with the patented features. *LaserDynaics*, 694 F.3d 51, 61 (Fed. Cir. 2012); *see also Sonos, Inc. v. D&M Holdings Inc.*, 297 F. Supp. 3d 501, 512 (D. Del. 2017) ("[The validity and infringement expert] may well be familiar with the technical features of UPnP, but that does not mean that he has any reason to know, without reference to any supporting evidence, that the availability of UPnP-compatible controllers was the primary reason for the commercial success of Sonos's products."). The same misapprehension of the respective roles of technical and damages experts caused Defendant to rely entirely on its own *technical* expert to determine "the proper apportionment factor" to be multiplied by Defendant's proffered royalty base. *See* Schenk Report, at 237; *see also* Motion to Strike K. Schenk (Dkt. No. 148), at 7; *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334–35 (Fed. Cir. 2009) ("The damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers.").

Filed Under Seal

Instead of arguing that Professor Sedlik *could not rely* on Dr. Brogioli for the technical features covered by the Asserted Patents and the Honeywell Patents, Defendant's entire Motion boils down to the argument that "Prof. Sedlik *did not rely* on discussions with OIT's technical expert Dr. Brogioli for the ███████████." Motion, at 6 (emphasis added). But that argument is demonstrably false, as the "Materials Considered" section of Professor Sedlik's Report makes clear:

> In preparation for the Report and for the expert testimony that I may be called on to provide, I have considered the materials listed . . . . In addition to my review of materials, ***I also discussed the technology at issue including the technology claimed in the Asserted Patents and the technology claimed in the ███████████ discussed below with OIT's technical expert Dr. Brogioli***. Dr. Brogioli confirmed my understanding of the inventions recited by the Asserted Claims and the ███████████ that I discuss below.

Sedlik Report, at 11; *see also id.* at 19 ███████████████████████████████████

███████████████████ . . . . I have also *reviewed these patents and discussed them with Dr. Brogioli*.").

Professor Sedlik was equally clear in deposition about the division of labor between he and Dr. Brogioli:

> I explain in this paragraph [in the Sedlik Report] and everywhere along the way where there is an interpretation of the patents or any suggestion -- ***any kind of interpretation of the patents, that I discussed it with Dr. Brogioli and that was his opinion expressed to me***. And then I have to take that and render my opinions based on my experience using ███████ throughout its long and storied life from beginning to now and also using aberration correction from a photographer's perspective, you know, the viability of those features and their effect on me in my business.

Sedlik Depo, at 219 (emphasis added); *see also id.* at 217 ("I wouldn't be qualified to render an opinion on these patents by reading the patent, the claims and the specifications. . . . I am qualified to talk about usability concerns and how the equipment works and how photographers use them at all levels.").

6

Filed Under Seal

Thus, the central, essential premise of Defendant's Motion is that "***Prof. Sedlik did not rely on discussions with OIT's technical expert Dr. Brogioli for the*** ▮▮▮▮," (Motion, at 6), but that is unmistakably untrue. There is no doubt that Professor Sedlik, in fact, "***discussed the technology at issue including the technology claimed in the Asserted Patents and the technology claimed in the*** ▮▮▮▮ ***discussed below with OIT's technical expert Dr. Brogioli***." Sedlik Report, at 11. Therefore, Defendant's argument is factually, categorically unsupportable, and its citations on the point are readily distinguished on the same basis. *See, e.g.*, *M2M Sols. LLC v. Motorola Sols., Inc.*, Civil Action No. 12-33-RGA, 2016 U.S. Dist. LEXIS 22944, at *11-12 (D. Del. Feb. 25, 2016) ("[W]hile Mr. Bluestein may have considerable experience in the industry generally, he does not have the [technical] expertise (*and he does not rely on others who do*) . . . .") (emphasis added).

### B. Professor Sedlik Properly Compares the Market Value of the Patented Features Here to the Value of the Licensed ▮▮▮▮ Features

In the last section of the Motion, Defendant begins by attacking Professor Sedlik's comparability opinion with a series of questions obviously addressed to a technical expert, and an explicit reference to Dr. Brogioli's technical opinions in this case. *See Motion*, at 7. Those arguments fail for the reasons discussed above, *viz* that Professor Sedlik did, in fact, rely on Dr. Brogioli to describe the technical scope of the Asserted Patents and the ▮▮▮▮

Specifically, Professor Sedlik "discussed . . . the technology claimed in the ▮▮▮▮ . . . with OIT's technical expert Dr. Brogioli," (Sedlik Report, at 11), and learned:



7

Filed Under Seal

Sedlik Report, at 18; *see also id.* at 19 ("▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬. . . . I have also reviewed these patents and discussed them with Dr. Brogioli.").

Informed thusly by Dr. Brogioli of the technical scope of the ▬▬▬▬ Patents, Professor Sedlik opines as to the relative value to consumers of those patented features ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, versus the patented features in this case, which likewise (as informed by Dr. Brogioli), "automat[e] the process of correcting certain aberrations that often appear in images." *Id.* at 18-19.  Professor Sedlik does not render an opinion of his own as to the technical scope or *features covered by* the ▬▬▬▬ ▬▬▬ and the Asserted Patents, which is taken as granted from Dr. Brogioli; instead, his opinion analyzes "[t]he **benefits** of the Asserted Patents and the ▬▬▬▬▬▬▬ to photographers." *Id.* at 18 (emphasis added).  This is exactly what a damages expert is supposed to do.

Defendant's cases do not suggest otherwise.  Defendant's primary case support,[3] *Flexuspine, Inc. v. Globus Med.*, No. 6:15-cv-201-JRG-KNM, 2016 U.S. Dist. LEXIS 199479, at *12-13 (E.D. Tex. July 6, 2016), excluded testimony where "[t]he extent of [the damages expert's] comparability analysis consist[ed] of his assertion that [the licensed] patents are 'in the same field of use and relate to the same types of products as the patents-in-suit." Specifically, the damages expert in *Flexuspine* opined that the patents in that case were comparable to the licensed patents

---

[3] Defendant cites two other cases:  (1) *Qualcomm Inc. v. Apple Inc.*, No. 17cv1375 DMS(MDD), 2019 U.S. Dist. LEXIS 9464, at *20 (S.D. Cal. Jan. 18, 2019), which is so heavily redacted in the cited portion that it is impossible to analogize to the instant facts; and (2) *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 80 (Fed. Cir. 2012), in which the district court "[r]eli[ed] on . . . irrelevant evidence to the exclusion of the many licenses expressly for the [Asserted] Patent," even though "the actual licensing evidence, [wa]s highly probative of the patented invention's economic value in the marketplace."

8

Filed Under Seal

*solely because* they "relate[d] to spine implants, rather than knee implants or hip implants." *Id.* at *13.

This case would only be analogous to *Flexuspine* if Professor Sedlik's comparability analysis simply said that both sets of patents relate to image processing in cameras, rather than lenses or image sensors. *Id.* But plainly, Plaintiff has gone *much* further in its comparability analysis than asserting that both the ▆▆▆▆▆ and the Asserted Patents relate to image processing. Instead, Professor Sedlik has concluded—in consultation and reliance upon Dr. Brogioli's analysis of the specific patent claims—that the respective patents are comparable because, *inter alia*:



Sedlik Report, at 18–19; *see also id.* at 18 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ").

This is not, as in *Flexuspine*, an assertion that every patent relating to spine implants is comparable to every other patent relating to spine implants. *Flexuspine*, 2016 U.S. Dist. LEXIS 199479, at *12–13. Instead, Professor Sedlik properly, and explicitly examined the specific benefits to consumers of the Asserted Patents versus the ▆▆▆▆▆ in terms of ease of use, time savings, and improved image quality. *See* Sedlik Report, at 19.

9

The Federal Circuit has repeatedly confirmed the validity of comparability analyses like that of Professor Sedlik in this case. *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) ("Moreover, all of the other differences that Apple complains of were presented to the jury, allowing the jury to fully evaluate the relevance of the licenses."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010); *ActiveVideo*, 694 F.3d at 1333; *see also Odyssey Wireless, Inc. v. Apple Inc.*, No. 15-cv-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982, at *14 (S.D. Cal. Sep. 14, 2016) ("Thus, Odyssey is incorrect in asserting that there is no evidence in Dr. Lynde's report as to the technological comparability between the licensed patents and the patents-in-suit. In addition, Dr. Lynde's reliance on Dr. Acampora's opinions in forming his own opinions is permissible.").

Defendant's Motion is ultimately not a criticism of methodology, but a criticism of Professor Sedlik's "conclusions that the licensed patents are technologically comparable to the patents-in-suit." *Id.* However, the degree of comparability between the patents is a "factual issue[] best addressed by cross examination and not by exclusion." *ActiveVideo*, 694 F.3d at 1333; *see also Ericsson*, 773 F.3d at 1227 ("[T]he fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility."); *VirnetX*, 767 F.3d at 1331 ("[T]hough there were undoubtedly differences between the licenses at issue and the circumstances of the hypothetical negotiation, '[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject.'"). The Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Exclude the Testimony of Professor Jeffrey Sedlik Regarding Comparability.

Filed Under Seal

Dated: November 16, 2020          Respectfully submitted,

                                  By: */s/ Korula T. Cherian*

                                  S. Calvin Capshaw
                                  State Bar No. 03783900
                                  Elizabeth L. DeRieux
                                  State Bar No. 05770585
                                  Capshaw DeRieux, LLP
                                  114 E. Commerce Ave.
                                  Gladewater, TX 75647
                                  Telephone: 903-845-5770
                                  ccapshaw@capshawlaw.com
                                  ederieux@capshawlaw.com

                                  Amadou Kilkenny Diaw
                                  Thomas Dunham
                                  RuyakCherian LLP
                                  1901 L St. NW, Suite 700
                                  Washington, DC 20036

                                  Korula T. Cherian
                                  Robert Harkins
                                  RuyakCherian LLP
                                  1936 University Ave, Ste. 350
                                  Berkeley, CA 94702

                                  J. Mark Mann
                                  State Bar No. 12926150
                                  G. Blake Thompson
                                  State Bar No. 24042033
                                  MANN | TINDEL | THOMPSON
                                  300 West Main Street
                                  Henderson, Texas 75652
                                  (903) 657-8540
                                  (903) 657-6003 (fax)
                                  mark@themannfirm.com
                                  blake@themannfirm.com

                                  *Attorneys for Plaintiff*
                                  *Optimum Imaging Technologies LLC*

Filed Under Seal

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 16th day of November 2020, with a copy of this document via electronic mail.

>*/s/ Korula T. Cherian*
>Korula T. Cherian

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7), the undersigned hereby certifies that counsel that this document should be filed under seal because it contains material designated under the Protective Order approved and entered in this case.

>*/s/ Korula T. Cherian*
>Korula T. Cherian