# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

OPTIMUM IMAGING TECHNOLOGIES LLC,

       *Plaintiff*,

   v.

CANON INC.,

       *Defendant*.

Case No. 2:19-CV-00246-JRG

**Filed Under Seal**

### PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE EXPERT TESTIMONY OF PROFESSOR JEFFREY SEDLIK

## TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II. PROFESSOR SEDLIK PROPERLY RELIED ON DR. BROGIOLI FOR THE
    TECHNICAL SCOPE OF THE VARIOUS PATENTS...................................................... 1

III. PROFESSOR SEDLIK PROPERLY PROVIDED OPINIONES REGARDING THE
    RELATIVE IMPORTANCE OF THE TECHNOLOGIES AT ISSUE IN THIS CASE4

IV. CONCLUSION ..................................................................................................... 5

## TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312 (Fed. Cir. 2012).............. 5

*CXT Sys. v. Acad., Ltd.*, No. 2:18-CV-00171-RWS-RSP, 2020 U.S. Dist. LEXIS 14416 (E.D. Tex. Jan. 28, 2020) ........................................................................................................... 4, 5

*In re Maxim Integrated Prods.*, No. 12-cv-244, 2015 U.S. Dist. LEXIS 124062 (W.D. Pa. Sep. 11, 2015)..................................................................................................................................... 3

*Kaist IP US LLC v. Samsung Elect. Co., Ltd.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 415 (E.D. Tex. May 2, 2018) .................................................................................................................. 3

*MobileMedia Ideas, LLC v. Apple Inc.*, 209 F. Supp. 3d 756 (D. Del. 2016) ............................... 4

*Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934 (E.D. Mich. 2014)......................................... 4

*PerdiemCo, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 155754 (E.D. Tex. Nov. 9, 2016)................................................................................................ 4

*Wonderland Nurserygoods Co. v. Thorley Indus. LLC*, Civil Action No. 2:13-cv-00387, 2015 U.S. Dist. LEXIS 110935 (W.D. Pa. Aug. 21, 2015)..................................................... 3

*Ziilabs Inc., Ltd. v. Samsung Elect. Co. Ltd., et. al.*, No. 14-cv-203-JRG-RSP, Dkt. 503 (E.D. Tex. Dec. 3, 2015)........................................................................................................ 4

## I.    INTRODUCTION

Defendant refuses to accept in its Reply (Dkt. No. 198), the most basic, indisputable fact governing its Motion (Dkt. No. 145), as well as the most basic, indisputable legal rule governing the Motion - that Professor Sedlik properly "discussed the technology at issue including the technology claimed in the Asserted Patents and the technology claimed in the ██████████ . . . with OIT's technical expert Dr. Brogioli." (Opposition at p. 6).   Defendant's position is therefore meritless, and its Motion should be denied.

## II.    PROFESSOR SEDLIK PROPERLY RELIED ON DR. BROGIOLI FOR THE TECHNICAL SCOPE OF THE VARIOUS PATENTS

Professor Sedlik relied on Dr. Brogioli's analysis of the patents and Dr. Brogioli's opinions that "████████████████████████████████████ ██████" and that "the Asserted Patents . . . automat[ed] the process of correcting certain aberrations that often appear in images." (Opposition at p. 4-10).  Professor Sedlik's reliance on Dr. Brogioli was fundamental to Professor Sedlik's understanding regarding the scope of the asserted patents.  Defendant's Reply continues to feign ignorance of the fact that Dr. Brogioli's role is to define the technical scope of patents, and Professor Sedlik's role was limited to assessing "[t]he benefits of the Asserted Patents and the ██████████████ to photographers" to provide Dr. Becker with additional information regarding the relative importance of these technologies to photographers as part of Dr. Becker's damages analysis in this case *Id.* at 8.

Apparently conceding the absurdity of the Motion's claim that "Prof. Sedlik did not rely on discussions with OIT's technical expert Dr. Brogioli for ██████████████" (Motion, at 6), Defendant's Reply swings absurdly in the opposite direction, arguing that Professor Sedlik "relied entirely on Dr. Brogioli for all the comparisons of the patented technology for which he offers opinions."   Reply, at 2.   However, Dr. Brogioli is not a professional photographer so

Professor Sedlik was best suited to and did in fact offer opinions regarding the importance of the technology claimed under the Asserted Patents and ███████████ at issue in this case.

Professor Sedlik has exactly the right expertise to understand the relative importance of lens aberration correction and ████████████ to photographers - which is what he did in this case.  Thus, informed by Dr. Brogioli that the ████████████ generally cover certain ██████████, while the Asserted Patents govern automated aberration correction, Professor Sedlik analyzed the relative importance of these technologies and provided Dr. Becker with additional information that he considered to formulate his damages analysis. Professor Sedlik described the relative importance of these technologies to photographers as follows:



(Opposition at p. 9 *citing* Sedlik Report, at 18–19; *see also id.* at 18 (████████████ ████████████████████████████")).

Professor Sedlik *does not* offer independent opinions regarding the technical scope of the patents at issue. He relied on OIT's technical expert to understand the scope of the Asserted Patents.  Thus, Defendant's headline that Professor Sedlik "is incapable of evaluating technical patents," entirely misses the point.  Reply, at 2; *see Kaist IP US LLC v. Samsung Elect. Co., Ltd.*,

No. 2:16-cv-1314-JRG-RSP, Dkt. 415, at *2 (E.D. Tex. May 2, 2018) ("Plaintiff admits Witt did not analyze the '055 Patents," but instead "relie[d] on the opinion of Dr. Kelin Kuhn (another Plaintiff technical expert)" to understand that patents' scope).

Defendant's headline that Professor Sedlik "is not a damages expert," (Reply, at 3), misses the point as well, because professor Sedlik *did not perform an independent damages analysis in this case*. Although Professor Sedlik is a licensing expert in the field of photography, he did not perform a licensing analysis in this case.  Professor Sedlik offered opinions regarding the importance of the technology claimed under the Asserted Patents and the technology claimed under the ████████, and discussed these issues with Dr. Becker. Dr. Becker performed his damages analysis pursuant to the *Georgia Pacific* factors properly considering Professor Sedlik's analysis regarding the importance of the technologies at issue to photographers.

As a result, each of the citations in Defendant's Reply for the proposition that "Mr. Sedlik is not a damages expert," includes a parenthetical that, *in itself*, clearly distinguishes those cases. For instance, Defendant's parenthetical for *Wonderland Nurserygoods Co. v. Thorley Indus. LLC*, Civil Action No. 2:13-cv-00387, 2015 U.S. Dist. LEXIS 110935, at *34 (W.D. Pa. Aug. 21, 2015), shows that the case involves a technical expert whose opinion on commercial success  was rejected. *See In re Maxim Integrated Prods.*, No. 12-cv-244, 2015 U.S. Dist. LEXIS 124062, at *43 (W.D. Pa. Sep. 11, 2015) ("*Wonderland* is readily distinguishable from the instant dispute about Dell's damages opinion for many reasons, including that the expert opinion in that case was not based, at all, upon comparable licenses, and Dell's opinion in this case is not based, at all, upon a cost-impact methodology.  The rationale in Wonderland is not relevant to the admissibility of Dell's opinion.").  The rest of Defendant's cases on this issue are inapposite for the same fundamental reason.

III.    **PROFESSOR SEDLIK PROPERLY PROVIDED OPINIONS REGARDING THE RELATIVE IMPORTANCE OF THE TECHNOLOGIES AT ISSUE IN THIS CASE**

Defendant also denies the most basic legal rule governing the Motion—that an expert may (often must) analyze license comparability by "comparing the purported benefits of [the respective patents]." (Reply, at 4). But every court to consider the issue, including this Court, has flatly rejected Defendant's position.[1] Professor Sedlik's opinion specifically addressed the importance and benefits associated with the technologies at issues in this case that Dr. Becker considered in his *Georgia Pacific* analysis. There is no basis to strike Professor Sedlik's opinions which fall squarely within the scope of permissible expert testimony in patent cases and follow a routinely approved methodology.

Thus, each court to consider the issue has allowed license comparability analysis by examination of similar features covered by third-party licenses and the relative value of the features in the asserted patents. *Ziilabs*, No. 14-cv-203-JRG-RSP, at *5 (approving reliance on "a group

---

[1] *See, e.g.*, *Ziilabs Inc., Ltd. v. Samsung Elect. Co. Ltd., et. al.*, No. 14-cv-203-JRG-RSP, Dkt. 503, at *5 (E.D. Tex. Dec. 3, 2015) (rejecting *Daubert* motion directed to license comparability opinion, where the expert found "that the [third-party] patents and the [asserted] patents cover comparable technologies because both sets of patents achieve the same objective using similar hardware," to "improve performance specifically for graphics processing'"); *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-cv-727-JRG-RSP, 2016 U.S. Dist. LEXIS 155754, at *11 (E.D. Tex. Nov. 9, 2016) (rejecting *Daubert* motion directed to license comparability opinion, which found comparability because "each license cover[ed] tracking systems using GPS technology"); *CXT Sys. v. Acad., Ltd.*, No. 2:18-CV-00171-RWS-RSP, 2020 U.S. Dist. LEXIS 14416, at *10 (E.D. Tex. Jan. 28, 2020) (rejecting *Daubert* motion directed to license comparability opinion, because the expert "specifically found the 'fast' benefit [of the third-party license technology] as directly comparable to the auto population and authentication technology of the Asserted Patents"); *id.* ("While Mr. Haas recognized that the Fossil-PayPal agreement was not a patent license and dissimilar in some ways to the rights that would be conveyed in a hypothetical license, he found that the agreement, like the Asserted Patents, relates to checkout functionality on an e-commerce website."); *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 958 (E.D. Mich. 2014) ("[H]e concluded that the benefits of the DeviceLogix technology have some similarities to the alpha-numeric display at issue in this case because both technologies relate to the ability to decentralize certain functions in an industrial control network."); *MobileMedia Ideas, LLC v. Apple Inc.*, 209 F. Supp. 3d 756, 764 (D. Del. 2016) (rejecting *Daubert* motion directed to license comparability opinion, because the expert "explain[ed] that 'the patented features at issue in this matter improve the overall user experience and ease of use of the accused Apple products,'" like the technology in the third-party licenses).

of third-party licenses [found] by searching the RoyaltySource database for transactions that relate to 'the licensing of fleet management software or location/GPS tracking software'").  Defendant denies this basic legal tenet, and the several Federal Circuit cases on point, with another perplexing string of parentheticals—attempting to escape the rulings of the Federal Circuit as dicta, because purportedly, "there was no challenge" to license comparisons in two cases, and another case arose from "a challenge that related to the sufficiency of the record for the jury."  Reply, at 4–5.

District courts, including in the Eastern District of Texas, have explicitly rejected Defendant's baseless interpretation of Federal Circuit case law.  *See, e.g.*, *CXT*, U.S. Dist. LEXIS 14416, at *18 ("The Federal Circuit has allowed an expert to determine a royalty rate based on comparable features in the marketplace."); *see also supra*, n.1; *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012) (holding that "[t]he degree of comparability of the [challenged] license agreements . . . [we]re factual issues best addressed by cross examination and not by exclusion," although the allegedly comparable license "did not involve the patents-in-suit and did not cover any of the technologies in the case").

Professor Sedlik conducted a robust analysis of the technologies at issue in this case to assess their benefits and importance to photographers. Dr. Becker considered Professor Sedlik's analysis and incorporated it into his *Georgia Pacific* analysis in this case. Professor Sedlik followed a routine and approved methodology that OIT's damages expert relied upon. There is no basis to strike Professor Sedlik's opinions and Defendant's Motion should be denied accordingly.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Exclude the Testimony of Professor Jeffrey Sedlik Regarding Comparability.

Dated: November 30, 2020                          Respectfully submitted,

By: */s/Korula T. Cherian*

Amadou Kilkenny Diaw
Thomas Dunham
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94702

J. Mark Mann
State Bar No. 12926150
G. Blake Thompson
State Bar No. 24042033
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)
mark@themannfirm.com
blake@themannfirm.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Optimum Imaging Technologies LLC*

-6-

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on November 30, 2020, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, E.D. Tex., using the electronic case filing system of the court.  I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail.

*/s/ Korula T. Cherian*
Korula T. Cherian

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

Pursuant to Local Rule CV-5(a)(7), the undersigned hereby certifies that counsel that this document should be filed under seal because it contains material designated under the Protective Order approved and entered in this case.

*/s/ Korula T. Cherian*
Korula T. Cherian