## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

OPTIMUM IMAGING TECHNOLOGIES LLC,

*Plaintiff,*

v.

CANON INC.,

*Defendant.*

C.A. No. 2:19-cv-00246-JRG

**JURY TRIAL DEMANDED**

### DEFENDANT CANON INC.'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF DOCKET CONTROL ORDER REGARDING ORDER CONTINUING TRIAL

# TABLE OF CONTENTS

I.      Introduction.................................................................................................................. 1

II.     Canon's Proposed DCO Accords with the Advanced Stage of This Case ......................... 2

III.    OIT's Proposal Would Re-open Discovery and Re-do the Latter Half of the Case ........... 3

        A.      There Is No Justification for Allowing OIT to Depose Canon's Japanese
                Witnesses Now.....................................................................................................4

        B.      Other Pending Motions or the Prospect of Additional Discovery Do Not
                Necessitate the Opposed Entries of OIT's Proposal ................................................7

        C.      OIT's Proposal Would Prejudice Canon and Force a Re-do of the Latter
                Half of This Case ...............................................................................................10

        D.      OIT Would Not Be Prejudiced If Its Additional DCO Entries Are Denied ..........13

IV.     Conclusion ............................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Drummond Am. Corp. v. Share Corp.*,
No. 4:08-cv-393, 2009 WL 3677167 (E.D. Tex. Oct. 30, 2009)................................................7

*Eon-Net LP v. Flagstar Bancorp.*,
653 F.3d 1314 (Fed. Cir. 2011)...............................................................................................6

*Realtime Data, LLC v. Packeteer, Inc.*,
No. 6:08cv144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ................................................6

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
No. 2:17-CV-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019) ..............................12

**Other Authorities**

Fed. R. Civ. P. 30(b)(1)...............................................................................................................8

Fed. R. Civ. P. 30(b)(6)...............................................................................................................8

Fed. R. Civ. P. 56(d) ...................................................................................................................8

Defendant Canon Inc. ("Canon") hereby responds to Plaintiff Optimum Imaging

Technologies LLC's ("OIT") motion (D.I. 253) for entry of a docket control order ("DCO")

made after the Court's November 20, 2020 order continuing the trial date (D.I. 188)

("Continuance Order").  Canon agrees with the essence of the first four entries in OIT's proposed

DCO (D.I. 253-1)—jury selection, juror questionnaire, pretrial conference, and notification of

agreements reached during meet-and-confer—but opposes the remaining entries, which represent

an effort on the part of OIT to re-do things that already have been done and have no place in an

amended DCO.[1]

## I.    INTRODUCTION

The Continuance Order makes clear that it is not "a window of opportunity to re-open

discovery or otherwise facilitate a 're-do' of cases substantially developed, narrowed, and ready

to proceed."  D.I. 188 at 4 n.5.  This case fits the bill of a "substantially developed" case, with

the parties having (i) completed fact and expert discovery, (ii) fully briefed motions for summary

judgment or to exclude/strike expert testimony, (iii) exchanged pretrial disclosures and

objections thereto, (iv) fully briefed motions *in limine*, and (v) submitted a proposed joint pretrial

order.  Canon's proposed DCO recognizes this significant progress and complies with the

Court's express admonishment not to re-do things already done.  As such, Canon proposes that

---

[1] As reflected in Canon's proposed order, the DCO milestones both parties agree require new
deadlines are jury selection, submission of juror questionnaire, pretrial conference, and
notification of agreements reached during meet-and-confer.  With respect to these entries,
Canon's proposal slightly varies from OIT's in that it (i) leaves the date of the pretrial conference
to be set by the Court rather than setting it for five weeks before jury selection and (ii) keys the
deadline for notifying the Court of agreements reached during the meet-and-confer to the pretrial
conference, as it was in each of the previous DCOs.

Also, with respect to the "Additional Requirements" section following the table of schedule
entries, Canon's proposal restores the Court's standard language regarding mediation and
indefiniteness that OIT's proposal revises or deletes.

new dates are needed only for the few remaining items that were not already accomplished before the rescheduled trial.

OIT's proposal, on the other hand, seeks to re-open fact discovery, re-open expert discovery, re-do dispositive and *Daubert* motions, re-do pretrial disclosures, re-do motions *in limine*, and re-do the joint pretrial order.  Although OIT claims it "is simply attempting to streamline this case," OIT's proposal would dramatically expand its scope.  And while OIT repeats the mantra of "complet[ing] the record" throughout its motion, that premise is flawed because OIT already had ample opportunity to make a complete record, and any gaps that OIT perceives are the direct result of its own tactical choices.

Moreover, the re-do OIT seeks would prejudice Canon severely.  OIT casts its proposal as even-handed, but the parties have litigated this case in fundamentally different ways: Canon has consistently pursued and provided discovery, developed its case, and laid out its arguments, while OIT did not diligently develop its contentions or provide detailed arguments to support them, and outright refused to take what it now claims is essential discovery.  In other words, Canon played by the rules and OIT did not.  Adopting OIT's proposed DCO would unfairly confer to OIT the significant, lopsided benefit of being able to see Canon's rebuttals to OIT's original, flawed case and give it the chance to try to repair those flaws.

Accordingly, the Court should adopt Canon's proposed DCO and reject OIT's attempt to set the parties back to a time before expert reports so that OIT can re-do everything from there on armed with the hindsight knowledge gained the first time around.

## II.     CANON'S PROPOSED DCO ACCORDS WITH THE ADVANCED STAGE OF THIS CASE

The parties have completed nearly all of the milestones for readying this case for trial:

- The parties have exchanged five opening expert reports and four rebuttal expert reports, and deposed the five experts.

- The parties have submitted and fully briefed eleven motions for summary judgment or to exclude/strike expert testimony.  *See* D.I. 141 to D.I. 152 and oppositions, replies, and sur-replies thereto.[2]

- The parties have exchanged pretrial disclosures (*see* D.I. 153; D.I. 154) and objections thereto.

- The parties have submitted and fully briefed motions *in limine*.  *See* D.I. 179; D.I. 185, and oppositions thereto.

- The parties have submitted a proposed joint pretrial order.  *See* D.I. 206; D.I. 207.

Prior to the Continuance Order, the parties were running full steam ahead towards the February 2021 trial.  The pretrial conference, previously scheduled for December 21, 2020, would have occurred by now.  Canon's proposed DCO recognizes the above progress by including new deadlines for just the few remaining milestones that the parties had not reached as of the date of the Continuance Order.

## III.   OIT'S PROPOSAL WOULD RE-OPEN DISCOVERY AND RE-DO THE LATTER HALF OF THE CASE

OIT's proposal would re-open fact discovery on issues OIT could have pursued under the original schedule and then re-do expert discovery, dispositive and *Daubert* motions, and other pretrial submissions.  In particular, OIT seeks to include new dates for deposing Canon's Japanese witnesses, even though OIT deliberately and tactically opted to forgo them under the previous schedule.  This proposed change underpins a cascade of new dates for expert discovery,

---

[2] Separate from the dispositive and *Daubert* motions contemplated by the prior DCO, Canon has also moved to strike a supplemental expert report submitted by OIT.  *See* D.I. 166.

motions, and submissions, which already have been completed under the current schedule—resulting in a do-over that would throw away months of efforts without any good cause.  And OIT's proposal would unfairly prejudice Canon by allowing OIT to retool its theories of infringement after having seen Canon's rebuttal case via its expert reports and dispositive motions.  It would reward OIT's attempts to flout the existing schedule and punish Canon for following the rules.

> **A.      There Is No Justification for Allowing OIT to Depose Canon's Japanese Witnesses Now**

The Court should reject the main premise of OIT's proposal, that OIT has any cause to depose Canon's Japanese witnesses after having refused to take those depositions under the existing schedule.  OIT opted for the gambit of holding out for in-person pretrial depositions, even after the Court rejected OIT's prior request to do so.  Perhaps seeing the writing on the wall, or otherwise perceiving the Continuance Order as a window to re-open discovery, OIT inserts deadlines for those depositions in its proposal.  But OIT could have and should have taken those depositions when it had the chance under the existing schedule.

The existing schedule gave the parties until November 2, 2020 to supplement expert disclosures.  D.I. 126 at 3.  Up to that point, Canon made significant efforts to make its Japanese witnesses available, so that OIT could address such testimony in its supplemental disclosures.  To account for the inability to hold the depositions in the witnesses' home country due to Japanese legal and logistical restrictions exacerbated by COVID-19, Canon arranged for its witnesses to testify in Singapore, where those restrictions did not apply.  Canon has detailed these efforts in its motion to enforce the DCO.  *See* D.I. 131 at 1, 9-10; D.I. 131-5 to -9 (travel approval, travel arrangements, conference room reservation).  OIT then could have deposed

these witnesses remotely in October and supplemented its expert disclosures by November 2

based on (and only on) any new information stemming therefrom.

The Court has made very clear that all depositions are to occur remotely during the

pandemic.  *See* April 20, 2020 Standing Order Regarding Pretrial Procedures in Civil Cases

Assigned to Chief District Judge Rodney Gilstrap During the Present COVID-19 Pandemic

at ¶ 16 ("There will be no in-person depositions conducted during the pandemic.  Depositions

should proceed forward using remote technologies that are widely available for conducting

depositions either telephonically or by video conference.").  After initially agreeing to this

procedure (*see* D.I. 233 at 2 (quoting D.I. 166-7)), and despite the significant efforts Canon had

undertaken to present its Japanese witnesses for deposition in Singapore during the month of

October, OIT reversed course and refused to take the depositions, pressing instead for in-person

depositions after Canon's witnesses arrive in Marshall for trial.[3]

OIT has argued that remote depositions are infeasible due to the Canon witnesses

speaking Japanese and needing to review Japanese documents, but never cogently argued why

interpreters, check interpreters, and large foreign-language documents cannot be used remotely.

OIT has suggested that some documents would be large-format, *see* D.I. 139 at 3, which might

be harder to view on a computer, but there are much simpler fixes than upending the schedule,

such as arranging for paper copies in advance and/or preparing electronic enlargements.  OIT

also has suggested that interpreters would increase the time needed to take the depositions, but it

---

[3] OIT's proposed schedule unrealistically contemplates that the in-person depositions it seeks
will be completed in short order, during a time when the Court has suspended all trials in
Marshall due to the worsening COVID-19 situation.  OIT's proposal also would require up to
two round trips for those witnesses (one for the deposition and another for the trial), imposing
upon them weeks if not months of quarantine.

acknowledges that this is true no matter the mechanism under which the depositions are taken. *Id.*

OIT has falsely stated that Canon made late document productions necessitating a later date to take the depositions. While OIT has pointed to "95,000 pages of documents, the vast majority in Japanese," D.I. 139 at 4, these documents were neither late nor atypical for patent litigation. Based on search terms on which OIT insisted, despite Canon's warnings of their overbreadth, Canon collected documents and diligently reviewed them and made its production by August 1, 2020. The timing and size of Canon's production was thus of OIT's own doing. *See* D.I. 131 at 10-11 & n.3. At any rate, OIT had the documents for at least two months before the Canon technical depositions would have occurred in October, and three months before the schedule's date for supplemental expert disclosures, which was plenty of time to translate and review them. OIT has identified nothing out of the ordinary in complex patent litigation, where document productions are routinely larger than Canon's by an order of magnitude. *See, e.g.*, *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) ("[I]t is not uncommon for an accused infringer to produce millions of pages of documents …."); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *6 (E.D. Tex. Aug. 18, 2009) ("While the Court is sympathetic to the time and effort required to sift through such voluminous records [over five million pages], Plaintiff cannot use the complexity of this case as an excuse for its lack of diligence or initial preparation.").

OIT argues that it had "difficulties in understanding the documents produced by Canon due to their extensive use of codewords." D.I. 253 at 4. But Canon provided OIT with the meanings of well over a hundred of these words, in response to OIT's informal request. D.I. 248-9 at 1, 4-5. If OIT still had issues with Canon's documents as they exist in the ordinary

course of business, then it had plenty of time in the existing schedule to seek further discovery—

including through interrogatories and depositions of Canon's technical witnesses.[4]

To the extent a stipulation on representative products could have facilitated taking the

depositions under the existing schedule's period for supplementation, OIT's dilatory approach is

solely to blame.  Whenever OIT provided a proposal, Canon promptly responded and asked for

basic details, after which OIT would then go radio-silent for weeks at a time.  *See* D.I. 233 at 3;

D.I. 257 at 1-4.

Accordingly, OIT lacks any reasonable cause, let alone good cause, to modify the DCO

to let it depose Canon's Japanese witnesses and upheave the rest of the schedule.  To establish

good cause, OIT must show "that the deadlines cannot reasonably be met despite the diligence of

the party needing the extension."  *Drummond Am. Corp. v. Share Corp.*, No. 4:08-cv-393, 2009

WL 3677167, at *1 (E.D. Tex. Oct. 30, 2009).  OIT's conduct has been anything but diligent.

**B.      Other Pending Motions or the Prospect of Additional Discovery Do Not
          Necessitate the Opposed Entries of OIT's Proposal**

While the resolution of pending motions may result in further developments in this case,

such as an additional deposition or removal of certain issues from the case, there is no need to

account for such developments by injecting the opposed entries into an amended DCO.  To do so

would preemptively confer blanket permission for supplementation without any showing of good

cause.  The Court should decline to enter the opposed DCO deadlines, and to the extent a party

may desire to supplement the record based on discovering information it did not previously have,

it should be required to show good cause, as it would need to do in any case.

---

[4] To that end, OIT has made reference to a motion to compel interrogatory responses it filed in
March (D.I. 61), but Canon fully addressed OIT's concerns and even provided OIT with detailed
information correlating Canon's then-existing document production to accused products and
categories of information.  *See* D.I. 64 at 3; *see generally id.*

For example, OIT has withheld the deposition of its witness Mr. Solomon pending a

motion for protective order (D.I. 93) regarding certain financial subject matter, prompting a

motion to compel (D.I. 128).  OIT does not dispute that Canon eventually will get to depose Mr.

Solomon at least on some issues.  Nevertheless, the DCO need not include corresponding entries

because no deadline will change.  The parties can schedule the deposition on their own once the

motions are resolved.  Canon does not foresee a need to supplement its expert reports and

summary judgment papers based on deposing Mr. Solomon, but supposing it did, the proper

course would be for Canon to seek leave of Court and make a sufficient showing of good cause.[5]

Similarly, as in any case, the rulings on dispositive and *Daubert* motions will indicate

which issues, if any, remain live for trial and inform further narrowing of the parties' claims and

defenses.  And as in any case, such rulings may result in a need for a supplemental proposed

joint pretrial order.  But the parties can proceed with narrowing the issues in this case without a

corresponding entry in the amended DCO, just as they would have done absent the Continuance

Order.  *See, e.g.*, D.I. 206 at 8, 10, 13 (the parties committing to meet and confer on multiple

issues and make updates to the proposed joint pretrial order based thereon).

Nor do the various pending OIT motions that OIT identifies (*see* D.I. 253 at 4-6) require

the new deadlines for "supplemental" expert reports, expert depositions, motions, and disclosures

---

[5] Although both parties have made Rule 56(d) requests for discovery in their summary judgment briefing, they were made on very different postures.  As explained herein, Canon had repeatedly sought from OIT its requested Rule 56(d) discovery—the deposition of Mr. Solomon (under both Rule 30(b)(1) and (6))—while OIT steadfastly refused to take the depositions of Canon's Japanese witnesses that it now requests under the rule.  Moreover, Canon's request was specific and showed diligence, while OIT's failed to comply with those basic requirements of the rule. *See* D.I. 184-1 (Canon's Rule 56(d) declaration); D.I. 195 at 9-10 (identifying the shortcomings of OIT's request).  Therefore, OIT is wrong to state in its motion that the parties "in essence agree[] that there is fundamental discovery that remains outstanding" in light of the Rule 56(d) requests.  D.I. 253 at 3 n.1.

-8-

in the opposed portion of OIT's proposed amended DCO.  OIT's inclusion of these motions is

largely pretextual, and at any rate, Canon disputes OIT's presumption that OIT is entitled to any

relief on those grounds.  For example, OIT's motions to compel interrogatory responses and

produce additional license agreements are based on narrow issues.  Canon has explained in its

oppositions to those motions how it already resolved the interrogatory dispute by amending its

response and providing detailed information, and how OIT's request for more licenses is a

repudiation of its agreement on the scope of that discovery (which it proposed and Canon

accepted).  *See generally* D.I. 64; D.I. 122.  Even now, OIT does not adequately explain why

new, "supplemental" deadlines would be warranted if those motions were granted, such as what

specifically it would seek to supplement.  As for the parties' motions regarding the depositions of

Canon's Japanese witnesses, Canon explains *supra* pp. 4-7 why that issue is much more than the

mere "dispute regarding the depositions of Canon Inc. witnesses who are located in Japan" that

OIT deceptively portrays.  D.I. 253 at 2.  Similarly, Canon explains *supra* p. 7 and in its recently

filed opposition (D.I. 257) why OIT's motion regarding representative products is untimely and

no basis for toppling the case schedule.

      In sum, OIT treats its various requested relief as *fait accompli*, but there is no guarantee

that OIT will prevail in any respect.  Even if it does, the appropriate course would be for OIT

then to make a showing of good cause to the extent it believed there was a need to supplement

the record.  This would ensure that any supplementation, if warranted with good cause, is

narrowly tailored to the circumstances that gave rise to it.  To allow otherwise—by adopting the

disputed portion of OIT's proposed DCO—would risk writing OIT a blank check for it to

completely re-do the entire back half of this case.

### C.     OIT's Proposal Would Prejudice Canon and Force a Re-do of the Latter Half of This Case

OIT's proposed DCO is the latest salvo in an increasingly overt campaign by OIT to

game the system.  For months, OIT has tried to engineer a situation in which it can formulate and

provide its case theories after seeing Canon's rebuttals and with minimal opportunity for Canon

to respond.  The Court rejected one of OIT's earlier attempts last summer, when the parties

presented competing DCO modifications made necessary by the pandemic.  Back then, OIT

pushed for in-person pretrial depositions of Canon's Japanese witnesses and a second round of

expert discovery.  *See* D.I. 117-2 at 3 (close of fact discovery and original expert discovery

period), 2 (pretrial deposition period), 1 (new round of expert discovery).  The Court rejected

OIT's proposal and provided for the existing November 2, 2020 date by which OIT had to

complete depositions and supplement its expert disclosures.  *See* D.I. 126; D.I. 131 at 7-8.

Undaunted, OIT again ended up pushing for in-person pretrial depositions and refused to depose

Canon's Japanese witnesses otherwise.  OIT then sought to inject new expert opinions based on

old documents into the case, which Canon has moved to strike.  *See* D.I. 166.  In that briefing,

OIT admitted that it would aim to supplement its expert report yet again after its desired pretrial

depositions, in which scenario Canon would have no opportunity to respond before trial.  *See*

D.I. 217 at 8; D.I. 233 at 3 n.3.  Most recently, OIT has sought a Court order to enshrine the

tardy infringement positions it has taken in its supplemental expert report—essentially a late

motion for summary judgment.  *See* D.I. 248.  These submissions show how OIT is changing its

theories of infringement after having gained the benefit of seeing the rebuttal opinions of

Canon's expert.

In particular, under the existing schedule for expert discovery, OIT provided

infringement theories through its expert Dr. Brogioli, and Canon provided rebuttals through its

expert Mr. Prentice.  Mr. Prentice gave detailed opinions on numerous shortcomings in Dr. Brogioli's analysis, including his superficial treatment of the representativeness of certain accused products.  *See* D.I. 166 at 5.  In Dr. Brogioli's supplemental report, OIT pivoted, accusing newly identified modules and aberration corrections as representative.  *See id.* at 12-13 (providing specific examples of how OIT's expert changed his infringement theories from his original report to his supplemental report after seeing how Canon's expert rebutted his original opinions).  The untimely changes OIT made in its disputed supplemental Brogioli report were not based on new discovery, but in direct response to Mr. Prentice's criticisms of Dr. Brogioli's original positions.  *See id.* at 2, 12-13.

OIT thus has signaled, loudly and clearly, that it treats the concept of supplementation as an unfettered opportunity to craft new arguments based on old information.  Beyond the shortcomings OIT has already improperly attempted to repair, Canon's summary judgment and *Daubert* motions have identified numerous additional weaknesses in OIT's case, including an utter lack of evidence and testimony on the doctrine of equivalents, invalidity on written description grounds, an incorrect understanding of the law of prior art sales, and an undeveloped position on the comparability of other licensed patents' technology.  OIT should not be given a chance to remedy these additional faults under the guise of an amended DCO, which would essentially throw out Canon's work and give OIT a re-do of the latter half of this case.

OIT would therefore gain a monumental windfall if the Court were to adopt its proposal.  Under OIT's schedule, the parties would have yet another opportunity to supplement their expert reports, which OIT would undoubtedly use to assert new infringement theories based on seeing Canon's rebuttal case and fully briefed summary judgment motions.  These multiple bites at the apple, made with the benefit of hindsight, would prejudice Canon and should not be permitted.

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at

\*9 (E.D. Tex. May 28, 2019).

OIT raises two arguments that Canon would not be prejudiced, but neither is convincing.

First, OIT spuriously suggests that its proposal "is not one-sided and applies equally to both

parties to permit the parties to complete their records and prepare for trial."  D.I. 253 at 6.  But

that would only be true if both parties were on equal footing coming into the final stretch of this

case.  This is decidedly not so: OIT is in a weaker position because it deliberately resisted taking

discovery of Canon's Japanese witnesses, failed to be diligent about proposing representative

accused products, presented underdeveloped or boilerplate contentions for key aspects of its

case, and ultimately went all-in on the risky strategy of waiting to make its case until the

eleventh hour (the days before trial, if OIT had its way).  In sharp contrast, Canon has played by

the rules, seeking early and often to take discovery, offering compromises or other remedial

action to narrow or isolate disputes such as for Mr. Solomon's deposition (which OIT refused),

engaging expeditiously with OIT's various concerns while OIT dragged its feet, and articulating

detailed, comprehensive contentions during the prescribed time periods.  As such, the opposed

entries of OIT's proposed DCO would disparately and severely impact Canon.  In other words,

OIT put itself in the position where it needs a re-opening of discovery and a re-do of the case,

whereas Canon does not.  This is why such a re-opening and re-do are exactly what OIT is

seeking, and why allowing those things would be so prejudicial to Canon.

OIT also argues that it should be allowed to refine its theory of the case after seeing

Canon's rebuttals because the current DCO had a supplemental expert disclosure date falling

after rebuttal reports and opening dispositive and *Daubert* motions.  *See* D.I. 253 at 6-7.  But this

argument is based on OIT's unduly broad philosophy on what constitutes proper

supplementation.  As noted above, OIT believes that it is allowed to make new arguments or

assert new opinions based on existing, previously available information.  Canon has never shared

that position, and in the submission to which OIT refers, Canon made clear that the current

DCO's supplementation period was to be "limited to information discovered during the

extension period that was not available from other sources." D.I. 124 at 9.  Because OIT's

supplemental Brogioli report improperly adds new opinions based on old information, Canon has

moved to strike it.  Supplementation is not an excuse to game the system by retooling theories in

response to the adversary's rebuttals.

> **D.     OIT Would Not Be Prejudiced If Its Additional DCO Entries Are Denied**

OIT makes oblique reference to prejudice that Canon "attempts" to inflict by opposing

OIT's proposal, although OIT does not develop an argument or provide specific examples of

what actual prejudice it might face.  *See* D.I. 253 at 7.  To the extent OIT argues that it would be

prejudiced by not being able to supplement the current record, that argument is meritless.  As

explained above, OIT had every opportunity to take whatever depositions it deemed necessary

under the existing schedule, but it actively resisted doing so and instead attempted to engineer a

delay that would provide it a tactical advantage.

Even so, Canon's proposal to limit the amended DCO to the four agreed-upon entries

does not outright prevent OIT from supplementing its case.  Rather, as in any other case, OIT

would be required to make a specific showing of good cause that whatever supplementation it

sought was warranted under the circumstances.  Doing so would emplace the safeguard that any

supplementation is narrowly tailored to the particular circumstances, as opposed to giving OIT

carte blanche to re-do flawed aspects of its case under the guise of supplementation.

## IV.   CONCLUSION

For the foregoing reasons, the Court should reject OIT's proposed amended DCO and

adopt Canon's instead.

Date:  December 28, 2020                 By: /s/ *Michael P. Sandonato by permission Andrea L. Fair*
                                         Michael P. Sandonato
                                         Peter D. Shapiro
                                         Daniel A. Apgar
                                         VENABLE LLP
                                         1290 Avenue of the Americas
                                         New York, NY 10104
                                         (212) 218-2100 (telephone)
                                         (212) 218-2200  (facsimile)
                                         MSandonato@Venable.com
                                         PShapiro@Venable.com
                                         DApgar@Venable.com

                                         *Of Counsel:*

                                         Wesley Hill
                                         Texas Bar. No. 24032294
                                         Andrea L. Fair
                                         Texas Bar. No. 24078488
                                         Ward, Smith & Hill, PLLC
                                         1507 Bill Owens Parkway
                                         Longview, Texas 75604
                                         (903) 757-6400 (main line)
                                         (903) 757-2323 (facsimile)
                                         wh@wsfirm.com
                                         andrea@wsfirm.com

                                         *Counsel for Defendant Canon Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that, on December 28, 2020, I electronically submitted the

foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas,

using the electronic case filing system of the court.  I hereby certify that all counsel of record

who have consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Andrea L. Fair*
Andrea L. Fair